Lisa PRESCOTT, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–02–00527–CR.

Court of Appeals of Texas,
San Antonio.

Oct. 15, 2003.

John D. Herrick, Attorney At Law, Raul Cantu, Attorney At Law, San Antonio, for Appellant.

Kerrisa J. Chelkowski, Asst. Criminal Dist. Atty., San Antonio, for Appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, KAREN ANGELINI, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by KAREN ANGELINI, Justice.

Lisa Prescott ("Prescott") appeals her conviction for recklessly causing injury to a child by omission. She raises eleven issues on appeal, but fails to demonstrate error. Accordingly, the judgment of the trial court is affirmed.

## BACKGROUND

Prescott shared an apartment with her mother, Brenda Cooper, and her four-year-old twin daughters. On December 6, 1999, one of Prescott's daughters was found drowned in the apartment complex's hot tub. Her other daughter was found nearby but unhurt. At the time of her daughter's death, Prescott was in the apartment. The apartment's door latch and screen were faulty, allowing the girls to leave the apartment. At trial, the State presented several witnesses who testified to prior occasions when they had seen the girls wandering around the apartment complex unsupervised. Prescott did not testify.

Prescott was indicted for knowingly or recklessly causing serious bodily injury to a child by omission.[1] The indictment alleged that Prescott had caused serious bodily injury to her daughter in that she "failed to adequately secure her residence to prevent [her daughter] from drowning," "failed to prevent [her] from exiting the ... residence to prevent [her] from drowning," and "failed to adequately supervise [her] to prevent [her] from drowning." The jury convicted Prescott of recklessly causing injury to a child by failing to prevent her from exiting the residence and failing to adequately supervise her to prevent her from drowning. The jury sentenced her to ten years of community supervision.

Prescott brings eleven issues on appeal. Her first and third issues on appeal raise the question of the application of the mental state to the result of the offense. The second, fifth, sixth, and tenth issues con-

---

1. Section 22.04 creates the offense of injury to a child: "A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child ... (1) serious bodily injury...." Tex. Pen.Code Ann. § 22.04(a) (Vernon 2003). For offenses committed by omission, the statute creates an offense if "(1) the actor has a legal or statutory duty to act or (2) the actor has assumed care, custody, or control of a child...." Id. § 22.04(b).

cern a parent's statutory duty to her child. Her fourth, seventh, and eighth issues involve the admission of evidence of extraneous bad acts without a limiting instruction. Prescott's two remaining issues allege a violation of her right to a speedy trial and that the State improperly commented on her failure to testify.

## THE APPLICATION OF THE MENTAL STATE TO THE RESULT

Prescott raises two issues regarding the application of the mental state to the result of the offense. In her first issue, she argues that the evidence is legally insufficient to show that it was her conscious objective or desire to cause serious bodily injury to her child. In her third issue, Prescott argues that the trial court erred in denying her request for a jury instruction that the jury must find that it was her conscious objective or desire to cause serious bodily injury to her child. The State argues that the evidence is legally sufficient to show that Prescott had the requisite mental state with respect to the result and that the trial court did not err in denying the requested jury instruction.

■ In a review for legal sufficiency, we view the evidence in the light most favorable to the verdict, and ask whether any rational trier of fact could have found beyond a reasonable doubt all of the elements of the offense. *Santellan v. State,* 939 S.W.2d 155, 160 (Tex.Crim.App.1997). As an initial step, we need to define the relevant elements of the offense that are at issue here.

■ Injury to a child is an offense that focuses, not on the conduct itself, but on the result of the actor's conduct. *Alvarado v. State,* 704 S.W.2d 36, 38 (Tex.Crim. App.1985).

[T]he injury to a child statute, like the homicide and other assaultive proscriptions, does not specify the "nature of conduct." Clearly then, the "nature of conduct" in these offenses is inconsequential (so long as it includes a voluntary act) to commission of the crimes. What matters is that the conduct (whatever it may be) is done with the required culpability to effect the *result* the Legislature has specified.

*Id.* at 39 (emphasis in original). The relevant culpable mental states for the offense of injury to a child by omission are intent, knowledge, and recklessness. TEX. PEN. CODE ANN. § 22.04(a) (Vernon 2003). In Prescott's case, the grand jury indicted her of committing the offense with knowledge and recklessness; the petit jury convicted her of recklessness.

A person acts knowingly with respect to a result of her conduct when she is aware that her conduct is reasonably certain to cause the result. TEX. PEN.CODE ANN. § 6.03(b) (Vernon 2003). A person acts recklessly with respect to the result of her conduct when she is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. *Id.* § 6.03(c). As applied to this case, in order to support a conviction of knowingly causing serious bodily injury to a child by omission, the evidence would have to show that Prescott was aware that her conduct was reasonably certain to result in serious bodily injury to her child. Likewise, in order to support a conviction of recklessly causing serious bodily injury to a child by omission, the evidence would have to show that Prescott was aware of but consciously disregarded a substantial and unjustifiable risk that a serious bodily injury to her child would occur.

■ The testimony of witnesses who, on numerous previous occasions, saw the girls wandering around the apartment complex unsupervised is legally sufficient evidence of recklessness. Two of Prescott's former

neighbors, Christine Wallace and Sharon Wernli, gave such testimony. Wallace testified that on one occasion, her son Brett, a playmate of the victim and her sister, told her that one of the girls was lost; Wallace found the girl playing in a driveway near a busy street and returned her to Prescott. Wernli testified that she had seen the girls playing on a patio unsupervised by their mother. In addition, several apartment complex staff members also testified about seeing the victim playing around the apartment complex unsupervised. Steven Accordino, a cabinet maker who did repair work at the apartments, testified that on multiple occasions he saw the two little girls wandering around the apartment complex unsupervised. Each time, he walked the girls back to their apartment. Alfonso Mireles, the service manager, testified that he found the girls outside their apartment unsupervised. He returned them to their mother, giving them a ride home in his golf cart. Rene Rios, a maintenance man, testified that, before the day the victim drowned, he saw the twins walking unsupervised by the pool. He also gave them a ride to the apartment office in a golf cart. Finally, Alice Tijerina Gamez, the property manager, testified that she saw Rios bringing the girls to the apartment office from the pool area.

■ Prescott argues that, in order to support a conviction, the evidence would have had to show that it was her conscious objective or desire that a serious bodily injury to her child occur. She bases this assertion on other cases involving injury to a child: for example, in *Beggs v. State,* 597 S.W.2d 375, 377 (Tex.Crim.App.1980) (panel op.), the State was required to prove that it was the defendant's conscious objective or desire to cause serious bodily injury. In *Beggs,* however, the defendant was charged with intentionally or knowingly causing injury to a child. The "conscious

objective or desire" language derives from the definition of intent: a person acts intentionally with respect to a result of her conduct when it is her conscious objective or desire to cause the result. TEX. PEN. CODE ANN. § 6.03(a) (Vernon 2003). Here, there is no allegation that Prescott caused serious bodily injury to her child intentionally; thus, it is not necessary for the State to prove that the result was her conscious objective or desire. Accordingly, Prescott's first issue on appeal is overruled.

Prescott also argues that she was entitled to a jury instruction on whether it was her conscious objective or desire to cause serious bodily injury. The Texas Code of Criminal Procedure specifies that the law applicable to the case must be distinctly set forth in the charge. TEX.CODE CRIM. PROC. ANN. art. 36.14 (Vernon Supp.2003). In this case, because injury to a child is a result-oriented offense, the applicable law requires the jury to consider whether the defendant had the relevant culpable mental state with respect to the result of the offense. *Alvarado,* 704 S.W.2d at 38. The charge read to the jury in this case correctly asked the jury to find whether Prescott had the relevant culpable mental state of knowledge or recklessness with respect to the result of serious bodily injury to her child. Because the indictment did not allege that Prescott acted intentionally with respect to the result, the language about whether the result was the defendant's conscious objective or desire was not applicable to the case. The trial court did not err in denying Prescott's requested instruction. Accordingly, Prescott's third issue on appeal is also overruled.

### PARENT'S STATUTORY DUTY TO HER CHILD

Prescott raises several issues regarding a parent's statutory duty to her child. In her second and sixth issues on appeal, she argues that the evidence is legally insuffi-

cient to show that she had care, custody, or control of her child. In her fifth issue on appeal, she argues that the trial court improperly instructed the jury regarding the duty of care, custody, or control. Finally, in her tenth issue, she argues that the trial court erred in failing to set aside her indictment for failure to state the manner and means of the offense. The State, by contrast, argues that the indictment, the evidence, and the jury charge all correctly relied on the statute setting forth a parent's duty to her child.

■ In her second and sixth issues, Prescott argues that the evidence is legally insufficient to find that she had a duty of care, custody, or control of her child and that, therefore, the trial court erred in denying her motion for a directed verdict. A challenge to the denial of a motion for directed verdict is in fact a challenge to the legal sufficiency of the evidence. *Cook v. State*, 858 S.W.2d 467, 470 (Tex.Crim. App.1993). As noted earlier, in reviewing legal sufficiency, we view the evidence in the light most favorable to the verdict, and ask whether any rational trier of fact could have found beyond a reasonable doubt all of the elements of the offense. *Santellan*, 939 S.W.2d at 160.

Prescott is challenging the conduct element of the offense. In this case, the voluntary conduct was actually an omission. An omission that causes serious bodily injury to a child is conduct constituting an offense if the actor has either (1) a legal or statutory duty to act or (2) assumed care, custody, or control of the child. TEX. PEN.CODE ANN. § 22.04(b) (Vernon 2003). With respect to the requirement of a statutory duty to act, the State cited section 151.001 of the Family Code which provides: "A parent of a child has the following rights and duties: . . . (2) the duty of care, control, protection, and reasonable

discipline of the child." TEX. FAM.CODE ANN. § 151.001(a) (Vernon 2002).

■ Prescott argues that the evidence is legally insufficient because it did not prove that Prescott had assumed care, custody, or control of her daughter. However, this argument is misplaced because the statute is phrased in the disjunctive: the defendant is responsible if she has *either* assumed care, custody, or control *or* has a legal or statutory duty to act. In this case, the State relied on the statutory duty, because the Family Code sets forth a parent's statutory duty to her child and the uncontroverted testimony showed that Prescott was the victim's parent. Therefore, in order to prove the conduct element of the offense, it was not necessary for the State to present evidence that Prescott had care, custody, or control of the victim. Thus, the trial court correctly denied Prescott's motion for a directed verdict on that ground. Prescott's second and sixth issues on appeal are overruled.

In her fifth issue on appeal, Prescott argues that, in three instances, the trial court erred in its instruction to the jury regarding a parent's duty of care, custody, or control. In the first instance, the trial court overruled Prescott's objection to the instruction stating, "A person commits an offense if she knowingly or recklessly, by omission, causes serious bodily injury to a child and the actor has a legal or statutory duty to act." In the second instance, Prescott objected to the instruction which stated, "A parent of a child has the following duties: the duty of care, control, protection and reasonable discipline of a child," and the trial court again overruled her objection. In the third instance, Prescott objected to the language "had assumed care, custody or control . . . and had the legal or statutory duty to act." The trial court overruled the objection.

■ The charge must distinctly set forth the law applicable to the case. Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon Supp.2003). As noted earlier, liability for an omission that causes injury to a child is a two-pronged test which depends on proof that *either* the actor has a legal or statutory duty to act *or* the actor has assumed care, custody, or control of the child. *See* Tex. Pen.Code Ann. § 22.04(b) (Vernon 2003). For cases involving a defendant who is not a parent, it is essential that the State prove that the person had assumed care, custody, or control of the child. *See, e.g., Wheeler v. State,* 952 S.W.2d 603, 609 (Tex.App.-Austin 1997, pet. ref'd) (involving a babysitter). However, as noted above, the Family Code states that parents have the duty of care, control, protection, and reasonable discipline of the child. Tex. Fam.Code Ann. § 151.001(a)(2) (Vernon 2002). When the defendant is a parent of the victim, the parent's statutory duty satisfies the first prong of the test for liability for an omission.

In this case, the trial court's instruction was consistent with the statutory duty prong of the test for liability for an omission. The second prong was not applicable because the evidence did not show that anyone besides Prescott had care, custody, or control of Sarah. Therefore, the trial court did not err in denying the requested instruction about the care, custody, or control prong. The instruction that Prescott objected to—that a parent has a duty of care, control, protection, and reasonable discipline of her child—was also applicable because the uncontroverted evidence showed that Prescott was Sarah's parent. Finally, the paragraphs asking the jurors whether Prescott, as Sarah's parent, had assumed care, custody, or control of Sarah and had a legal or statutory duty to act were a correct application of the law to the facts because the evidence showed that Prescott was Sarah's parent. Therefore,

the trial court did not err in overruling Prescott's objections to the charge. Prescott's fifth issue on appeal is overruled.

In her tenth issue on appeal, Prescott argues that the trial court erred in denying her motion to set aside the indictment on the grounds that it fails to state the manner and means of the offense. At a pretrial hearing, Prescott argued that the indictment should be set aside because it failed to allege the manner and means of the offense; specifically, it did not allege a statutory duty to act or state how she failed to adequately secure her residence. The trial court denied the motion.

Paragraph I(A) of the indictment alleges that Prescott, as the victim's parent, had assumed care, custody, and control of her and had a legal and statutory duty to act. Also, Paragraph I(A) specifies that Prescott "failed to adequately secure her residence to prevent the said complainant from drowning." Paragraphs I(B) and I(C) vary only in that they specify that Prescott "failed to prevent the said complainant from exiting the said residence to prevent the said complainant from drowning" and "failed to adequately supervise the said complainant to prevent the said complainant from drowning," respectively.

■ Generally, an indictment that tracks the statutory language is legally sufficient, and it need not allege facts which are merely evidentiary in nature. *Bynum v. State,* 767 S.W.2d 769, 778 (Tex. Crim.App.1989). If a defendant files a timely motion to set aside the indictment, the indictment must allege on its face facts necessary to show that the offense was committed, to bar a subsequent prosecution for the same offense, and to give the defendant notice of precisely what she is charged with. *Id.* at 778–79. However, penal provisions that criminalize a failure to act without informing those subject to

prosecution that they must perform a duty to avoid punishment are unconstitutionally vague. *Billingslea v. State,* 780 S.W.2d 271, 275–76 (Tex.Crim.App.1989).

 The language in the indictment regarding a statutory duty to act is derived from the first prong of the two-pronged test for liability for an injury to a child caused by omission. *See* TEX. PEN. CODE ANN. § 22.04(b)(1) (Vernon 2003). The indictment also recites the fact that Prescott is the victim's parent. As noted earlier, the Family Code prescribes a parental "duty of care, control, protection, and reasonable discipline of the child." TEX. FAM.CODE ANN. § 151.001(a)(2) (Vernon 2002). Because the indictment stated the source of Prescott's duty—the fact that she is the victim's parent—the indictment gave sufficient notice of the source of the duty to act. Because the offense is limited to people who have a legal or statutory duty to act, it is not unconstitutionally vague. Finally, each paragraph of the indictment described a different manner and means for causing serious bodily injury: failure to adequately secure residence, failure to prevent exit, and failure to adequately supervise. Providing more detail about the manner and means would involve alleging facts that are merely evidentiary. Accordingly, Prescott's tenth issue on appeal is overruled.

## EXTRANEOUS BAD ACTS

In her fourth, seventh, and eighth issues on appeal, Prescott challenges the trial court's rulings allowing the admission of evidence of extraneous bad acts and the trial court's failure to give limiting instructions regarding that evidence. As the following discussion will show, the trial court did not err in either admitting the evidence or in refusing to give limiting instructions.

As noted earlier, a significant portion of the State's case against Prescott consisted of testimony about prior instances of the victim and her sister not being supervised by their mother. During each witness's testimony, Prescott repeatedly objected under Rule 404(b) of the Texas Rules of Evidence, arguing that the testimony regarding prior instances of the children playing unsupervised around the apartment complex constituted evidence of extraneous bad acts which should be excluded. Prescott also objected under Rule 403 that the danger of unfair prejudice substantially outweighed its probative value. The trial court overruled Prescott's 404(b) and 403 objections. In addition, at the close of Wernli's testimony and again at the charge conference, Prescott requested a limiting instruction to the jury that the testimony not be considered as evidence of character to prove action in conformity therewith. The trial court overruled Prescott's request, noting that it did not believe the testimony constituted evidence of extraneous bad acts as contemplated by Rule 404(b).

 The trial court's rulings on whether to admit or exclude evidence are reviewed under an abuse of discretion standard. *Green v. State,* 934 S.W.2d 92, 102 (Tex.Crim.App.1996). Rule 404(b) provides: "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." TEX.R. EVID. 404(b). However, such evidence is admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* And, notwithstanding rule 404, for offenses including injury to a child, "evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for

its bearing on relevant matters, including: (1) the state of mind of the defendant and the child...." TEX.CODE CRIM. PROC. ANN. art. 38.37, § 2 (Vernon Supp.2003).

██ We agree with Prescott's contention that the testimony regarding prior instances of the victim and her sister playing around the apartment complex unsupervised constitutes evidence of extraneous bad acts. Although the testimony concerns not acts but omissions—Prescott's repeated failure to supervise her children—those omissions are very similar to the omissions of which Prescott was accused in the indictment. In the context of this case, the testimony regarding those omissions presents the very danger that Rule 404(b) was designed to prevent: that jurors will make an inference about Prescott's character as a neglectful parent and conclude that, on the day of the victim's death, Prescott acted in conformity with that character. Furthermore, these instances were included in the State's pretrial notice of intent to use extraneous crimes, wrongs, or bad acts under Rule 404(b) and article 38.37.

██ However, the State is correct in noting that the testimony has relevance for a purpose besides showing action in conformity with character, namely: to show the culpable mental state of knowledge or recklessness. As defined in the Penal Code, "A person acts knowingly, or with knowledge, with respect to the result of his conduct when he is aware that his conduct is reasonably certain to cause the result." TEX. PEN.CODE ANN. § 6.03(b) (Vernon 2003). Furthermore, "A person acts recklessly, or is reckless, with respect to the circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." *Id.* § 6.03(c). The repeated prior instances

when the victim and her sister left the apartment and wandered unsupervised in the apartment complex parking lot and pool area are relevant to show that Prescott was aware of the risk that the girls could get out of the apartment and the resulting dangers they faced. Therefore, the evidence was admissible for the limited purpose of proving the culpable mental state. Furthermore, the strong probative value of the evidence was not substantially outweighed by the danger of unfair prejudice, so the trial court did not err in overruling Prescott's Rule 403 objections. Prescott's seventh and eighth issues on appeal, challenging the admission of the extraneous acts evidence, are overruled.

Prescott's fourth issue on appeal relates to the trial court's failure to give a limiting instruction regarding the extraneous bad acts evidence. Prescott made several requests for limiting instructions: at the close of Wernli's testimony, at the close of Accordino's testimony, at the close of Mireles's testimony, at the close of Rios's testimony, and at the charge conference. Prescott did not, however, request a limiting instruction during or after the testimony of Wallace, the State's first witness.

██ If the State is permitted to introduce evidence regarding extraneous bad acts for a limited purpose, and the defendant timely requests an instruction limiting consideration of those acts, the trial court errs in not giving the instruction. *Ex parte Varelas,* 45 S.W.3d 627, 631 (Tex. Crim.App.2001); *see also* TEX.R. EVID. 105(a). The relevant timing for a limiting instruction request is at the moment the evidence is admitted. *Hammock v. State,* 46 S.W.3d 889, 893 (Tex.Crim.App.2001).

██ Prescott's requests for limiting instructions were not timely. Wallace and Wernli had already given all of their testimony regarding extraneous bad acts

by the time Prescott made her first request for a limiting instruction. The requests following Wernli's, Accordino's, Mireles's, and Rios's testimony were not timely because the evidence had already been admitted for all purposes by the time Prescott made the request. Likewise, the request at the charge conference was also untimely: as the court of criminal appeals has noted, "it is impossible for [the jury] to go back at the close of the trial and reassess the evidence in light of the limiting instruction, even if they could appreciate which items of evidence the instruction was supposed to apply to." *Hammock*, 46 S.W.3d at 895 (quoting *Rankin v. State*, 974 S.W.2d 707, 712 (Tex.Crim.App.1996)). Because Prescott's requests for limiting instructions were not timely, the trial court did not err in denying the instructions. Prescott's fourth issue on appeal is overruled.

### REMAINING ISSUES

In her ninth issue on appeal, Prescott argues that she was deprived of her right to a speedy trial. Prescott argues that the trial court erred in failing to set aside the indictment for failure to grant her a speedy trial. She argues that she was prejudiced because she became so depressed about the loss of her daughter that she was unable to testify at her trial. Prescott filed a motion for speedy trial. On several occasions, Prescott's counsel moved for continuances and announced not ready. The trial court issued a show cause order for Prescott's counsel to explain his failure to appear as ordered at a hearing. On the first day of trial, Prescott filed a motion to set aside the indictment. The trial court denied the motion, noting that Prescott's continuances and other requests had waived her speedy trial complaint. We review the trial court's ruling on a bifurcated standard: the facts are reviewed for abuse of discretion and the law is reviewed de novo. *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex.Crim.App.2002). The factors to consider are the length of the delay, the reason for the delay, the defendant's assertion of her right, and prejudice to the defendant. *Id.* at 647–48. In this case, part of the delay was caused by Prescott's attorney's continuances, announcements of not ready, and failures to appear. Therefore, Prescott was not deprived of her right to a speedy trial. Prescott's ninth issue on appeal is overruled.

In her eleventh issue on appeal, Prescott argues that the trial court erred in overruling her objection to the State's alleged comment on her silence. During closing argument, the State noted that the evidence had not shown, as Prescott had promised in her opening statement, that Cooper had been responsible for supervising the victim at the time of her death. Prescott did not testify in her own defense, nor did Cooper take the stand. Reference to silence of another witness (Cooper) is not a comment on the defendant's silence. The State's remark was not a comment on Prescott's failure to testify. Prescott's eleventh issue on appeal is overruled.

### CONCLUSION

Having overruled all issues, we affirm the judgment of the trial court.