In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00177-CR


______________________________




ROGER DALE GENTRY, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 5th Judicial District Court


 Cass County, Texas


Trial Court No. 2007F00029




 




Before Morriss, C.J., Moseley and Cornelius,* JJ.

Memorandum Opinion by Chief Justice Morriss




________________________

*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment



MEMORANDUM OPINION



 Roger Dale Gentry appeals from his conviction by a jury for aggravated sexual assault of a
child. See Tex. Penal Code Ann. § 22.021(a)(1)(B)(iii) (Vernon Supp. 2008). (1) The jury assessed
his punishment at life imprisonment and a $5,000.00 fine. Gentry presently has two other
convictions currently on appeal before this Court. (2)

 Because the issues raised in each appeal are identical, for the reasons stated in our opinion
dated this day in Gentry v. State, cause number 06-07-00175-CR, we affirm the judgment of the trial
court.

 As noted previously, however, the trial court's judgment in this case indicates the statute for
the offense is "22.021(2)(A) Penal Code." This Court has the authority to reform the judgment to
make the record speak the truth when the matter has been called to our attention by any source. 
French v. State, 830 S.W.2d 607 (Tex. Crim. App. 1992). In Asberry v. State, 813 S.W.2d 526 (Tex.
App.--Dallas 1991, pet. ref'd), the court noted that the authority of the appellate court to reform
incorrect judgments is not dependent on request of any party; the appellate court may act sua sponte. 
The Texas Rules of Appellate Procedure provide direct authority for this Court to modify the
judgment of the trial court. Tex. R. App. P. 43.2.

 Therefore, we hereby reform the judgment to indicate the correct statute for the offense: Tex.
Penal Code Ann. § 22.021(a)(1)(B)(iii). 

 As reformed, we affirm the judgment.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: October 8, 2008

Date Decided: December 18, 2008


Do Not Publish

1. We note that the judgment indicates the statute for the offense as Tex. Penal Code Ann.
§ 22.021(2)(A). The correct statute is Tex. Penal Code Ann. § 22.021(a)(1)(B)(iii).
2. Gentry appeals from three convictions. In cause numbers 06-07-00175-CR and 06-07-00177-CR, he appeals from his convictions of aggravated sexual assault of a child, and was
sentenced in each case to life imprisonment and a $5,000.00 fine. In cause number 06-07-00176-CR,
he appeals from his conviction of indecency with a child by sexual contact, and was sentenced to
twenty years' imprisonment and a $5,000.00 fine.


l." + WPid + ".style.visibility = 'hidden'" );
}



















In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00109-CR
______________________________


JAMES CORY HICKS, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the Fifth Judicial District Court
Cass County, Texas
Trial Court No. 2004F0089A


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss


O P I N I O N

            Billy Ray Johnson, a forty-two year-old, mentally retarded black man, had been invited to
a late-September drinking party in rural Cass County, ostensibly to provide the youthful,


 white
revelers some "entertainment" with his dancing. But Johnson became a problem when, after a
dispute arose over a change in the type of music being played, Colt Amox punched Johnson once
in the face, knocking him unconscious. The rest of the night, the question was what to do with the
unconscious Johnson.
            James Cory Hicks, one of the revelers, was, at the age of twenty-three or twenty-four, the
eldest person present, except for Johnson. Hicks had arrived at the party after midnight,


 after
finishing his shift as a Cass County jailer. When most of those present suggested taking the
unconscious Johnson to either the hospital or the police, Hicks nixed the idea, saying he was worried
about losing his job or his children, or getting in trouble for drinking alcohol with underage persons. 
            After lying on the ground for approximately an hour, the still unconscious Johnson was put
in the back of Amox's truck, and a convoy formed. At least two witnesses testified Hicks led the
convoy. Dallas Stone and Wes Owens said Hicks told them that, when Hicks stopped his vehicle,
they should put Johnson on the side of the road. At a county road leading to a local dump, in the
early morning hours of September 28, 2003, Johnson was removed from Amox's truck and placed
in a small sandy area approximately eight to ten feet from the roadway. Owens said he suggested
the road because he thought Johnson's family lived in the area. 
            About 5:00 a.m., Hicks contacted local law enforcement and told them he and Owens had
been driving around and came across Johnson's body lying on the side of the road. Hicks
subsequently changed his story, saying Amox had hit Johnson and acted alone in moving the victim. 
            Johnson was finally taken to the Linden Hospital the morning of September 28. He was
subsequently diagnosed with a subarachnoid hemorrhage, consistent with a blow to the head.
Johnson did not fully regain consciousness for two or three days. 
            Hicks was charged with (a) intentionally or knowingly causing serious bodily injury to a
disabled person; (b) intentionally, knowingly, or recklessly causing serious bodily injury to a
disabled person, having chosen the victim based on his race or mental disability; and (c) intentionally
or knowingly causing bodily injury to Johnson by omission. The jury acquitted Hicks on the first
two counts, and found him guilty on the third. As required by law based on the jury's assessment,
the trial court sentenced Hicks to three years' confinement and probated the sentence.


 The trial court
ordered Hicks' community supervision to be for a term of ten years. 
 
            On appeal, Hicks challenges the legal and factual sufficiency of the evidence to prove either
that Hicks caused bodily injury


 to Johnson or that Hicks had assumed Johnson's care, custody, or
control. We affirm because (1) the evidence is sufficient to prove that Hicks caused bodily injury
by omission, and (2) the evidence is sufficient to prove that Hicks had assumed Johnson's care,
custody, or control.
            In our review of the legal sufficiency of the evidence, we employ the standards set forth in
Jackson v. Virginia, 443 U.S. 307, 319 (1979). This calls on the reviewing court to view the relevant
evidence in the light most favorable to the verdict and determine whether any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt. Johnson v. State,
23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In our review, we must evaluate all the evidence in the
record,  both  direct  and  circumstantial,  whether  admissible  or  inadmissible.  Dewberry  v.  State,
4 S.W.3d 735, 740 (Tex. Crim. App. 1999).
            In a factual sufficiency review, the appellate court views all the evidence in a neutral light
and determines whether the evidence supporting the verdict is too weak to support the finding of
guilt beyond a reasonable doubt or if evidence contrary to the verdict is strong enough that the
beyond-a-reasonable-doubt standard could not have been met. Threadgill v. State, 146 S.W.3d 654,
664 (Tex. Crim. App. 2004) (citing Zuniga v. State, 144 S.W.3d 477, 486 (Tex. Crim. App. 2004)).
(1)       The Evidence Is Sufficient To Prove That Hicks Caused Bodily Injury by Omission
            In challenging the legal and factual sufficiency of the evidence to show injury by omission,
Hicks argues that the delay in getting Johnson any medical attention made no difference in Johnson's
condition resulting from his closed head injury. Hicks also attempts to make a distinction between
failing to get Johnson prompt medical care and leaving his unconscious body lying on the side of the
road for a period of time.
            Section 22.04 requires that, after an initial injury, the victim must sustain further bodily
injury because of the actor's omission. See Dusek v. State, 978 S.W.2d 129, 133 (Tex. App.—Austin
1998, pet. ref'd). "Bodily injury" is defined as "physical pain, illness, or any impairment of physical
condition." Tex. Pen. Code Ann. § 1.07(a)(8) (Vernon Supp. 2005). 
            While there is evidence Johnson's brain injury was not exacerbated by the delay in getting
him medical care,


 there was evidence the delay caused him further physical pain or physical
impairment. John Elder, the deputy who first saw Johnson on the side of the road, after Hicks called
the  sheriff's  office,  said  it  was  a  cool  September  morning,  and  Johnson,  wearing  only  jeans
and a T-shirt, was curled up in a fetal position as if cold. Johnson was making a gurgling sound as
he breathed; Dallas Stone said he had to put Johnson on his side, as opposed to his back, so he could
breathe. When Owens and Hicks returned to the place Johnson had been dumped, about twenty to
thirty minutes after leaving him, Johnson was still making the gurgling sounds. The nurse who first
saw Johnson at the hospital said Johnson was cold and shivering, had aspiration pneumonia,


 and
was covered head to toe with ant bites. At the very least, Johnson suffered bodily injury, as
contemplated in the Texas Penal Code, from the ant bites and the cold. That he vomited while
unconscious and was therefore having difficulty breathing showed an impairment of his physical
condition. The evidence was legally sufficient to support the finding of bodily injury by omission.
            Likewise, the above evidence is not too weak to support the finding of guilt beyond a
reasonable doubt, nor is there evidence contrary to the verdict strong enough that the beyond-a-reasonable-doubt standard could not have been met. The evidence was factually sufficient to support
the jury's finding of bodily injury by omission.



 
(2)       The Evidence Is Sufficient To Prove That Hicks Had Assumed Johnson's Care, Custody, or
Control
            Hicks' third and fourth points of error claim, respectively, the evidence was legally and
factually insufficient to prove he assumed care, custody, or control of the unconscious Johnson on
the night in question. Hicks argues that no care, custody, or control has been assumed within the
meaning of the statute unless the actor has accepted responsibility for the victim's protection, food,
shelter, and medical care. We disagree.
            A person commits an offense if he or she "by omission causes to a . . . disabled individual
. . . bodily injury." Tex. Pen. Code Ann. § 22.04(a)(3). An omission constitutes the offense if "the
actor  has  assumed  care,  custody,  or  control  of  a  .  .  .  disabled  individual."  Tex.  Pen.  Code
Ann. § 22.04(b)(2).
[T]he actor has assumed care, custody, or control [of the victim] if he has by act,
words, or course of conduct acted so as to cause a reasonable person to conclude that
he has accepted responsibility for protection, food, shelter, and medical care for a
child, elderly individual, or disabled individual.

Tex. Pen. Code Ann. § 22.04(d). 
            To properly understand these provisions, one must realize the statutory scheme is intended
to   protect  three  classes  of  vulnerable  individuals:  children,  the  elderly,  and  the  disabled. 
Subsection (d) appears intended to protect those vulnerable individuals at least when they are part
of a specific, statistically significant situation: the nontraditional domestic arrangement, such as the
live-in boyfriend or girlfriend. See Hawkins v. State, 891 S.W.2d 257 (Tex. Crim. App. 1994) (under
amended Section 22.04, conviction affirmed for live-in boyfriend who failed to protect child of his
partner); Florio v. State, 784 S.W.2d 415 (Tex. Crim. App. 1990) (under former Section 22.04,
conviction reversed for live-in boyfriend who failed to protect child of his partner); Prescott v. State,
123 S.W.3d 506 (Tex. App.—San Antonio 2003, no pet.) (parent has duty to protect child,
independent of any assumption of care).
            We interpret Section 22.04(d) to establish a bright-line rule that, once someone has become
a caretaker—even informally—for a vulnerable individual, he or she cannot then escape
responsibility for the individual by arguing he or she has not assumed that individual's care, custody,
or control. We do not believe the converse is true, however. If one were required to become a full-service caretaker to have assumed "care, custody, or control" of a vulnerable person, such a
requirement would render meaningless the word "or" in the phrase "care, custody, or control."


 We
hold that the phrase "care, custody, or control" has more breadth than subsection (d) and that Hicks
is covered by that additional breadth.
            Under the Texas Penal Code, "'[p]ossession' means actual care, custody, control, or
management." Tex. Pen. Code Ann. § 1.07(a)(39) (Vernon Supp. 2005). An identical definition
of   possession   applies   to   controlled   substances.   See   Tex.   Health   &   Safety   Code
 Ann.  § 481.002(38) (Vernon Supp. 2005). While the general definition of possession ordinarily
is, and the controlled substances definition exclusively is, concerned with possession of property
rather than people, there is no limitation in the general definition making it nonapplicable here. An
implicit finding of the jury was that Hicks had effective care, custody, or control of Johnson after
Johnson's initial injury. The evidence is sufficient to support that finding.
            After Johnson's injury, the majority of those present expressed a desire to get Johnson to a
hospital or other aid, but Hicks squelched that idea by expressing concerns about his own personal
risks posed by this situation. Hicks was the oldest of the group; was, because of his employment as
a Cass County jailer, apparently cloaked with a certain air of authority—in the minds of this group
of revelers, at least; and actually exerted direction and control over the group. Hicks testified on
cross-examination that Johnson should have been taken to a hospital. Hicks was aware that Johnson
was in need of medical attention. Hicks led the convoy of vehicles taking Johnson from the scene,
and Hicks directed the others in what to do when Hicks stopped, that is, to lay Johnson on the side
of the road. Instead of taking Johnson to a hospital—approximately a mile from the party's
location—Hicks and company took Johnson about four miles away from the local hospital and
dumped him on the side of a county road. Hicks testified he and Owens had planned to go back to
get Johnson after the rest of the group disbanded. The evidence is sufficient to show that Hicks
effectively assumed care, custody, or control of Johnson and became instrumental in delaying
Johnson's medical care, thus exposing him to the cold, the ants, and the aspiration of his own vomit. 
The evidence was legally sufficient for the jury to find that Hicks assumed care, custody, or control
of Johnson.
            Considering the evidence summarized above, we cannot say such evidence was too weak to
support the jury's finding, beyond a reasonable doubt, that Hicks assumed care, custody, or control
of Johnson. The evidence was factually sufficient.
            We affirm the trial court's judgment.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          December 14, 2005
Date Decided:             January 6, 2006

Publish