

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-23-00230-CR

RAY LEE COCKRELL, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 22F1263-102

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens
Dissenting Opinion by Justice Rambin

# MEMORANDUM OPINION

Ray Lee Cockrell's pit bulls left his property and attacked a neighbor's visiting grandchild, Nathan Smith,[1] while he was walking in the woods.[2] It was undisputed that Cockrell did not know Nathan and had no knowledge that he was on the neighboring property. After hearing the evidence, a Bowie County jury found Cockrell guilty of injury to a child by omission and assessed a sentence of thirty-five years' imprisonment.

The State secured an indictment against Cockrell for the first-degree felony of injury to a child based on omission, an offense that only applies to people who either have care, custody, or control of the child or have some statutory duty to the child. In particular, the State alleged that Cockrell owed a duty to Nathan under Section 822.042 of the Texas Health and Safety Code. Because we find that Section 822.042 contains no statutory duty to prevent injury to Nathan and that such a claim is inconsistent with existing caselaw, we sustain Cockrell's points of error arguing that the State neither alleged nor proved the statutory elements of the offense.

## I.     The Statutory Elements of the Offense

A person commits injury to a child by omission if he "intentionally, knowingly, or recklessly by omission, causes to a child . . . serious bodily injury." TEX. PENAL CODE ANN. § 22.04(a)(1). "Injury to a child is a result-oriented offense [and] requir[es] a mental state that relates not to the specific conduct but to the result of that conduct." *Williams v. State*, 235

---

[1]We use pseudonyms to protect the identity of "any person who was a minor at the time the offense was committed." TEX. R. APP. P. 9.10(a)(3).

[2]In companion cause number 06-23-00229-CR, Cockrell appeals from a conviction of attack by dog. A full discussion of relevant facts is included in our opinion in cause number 06-23-00229-CR and is incorporated here by reference.

S.W.3d 742, 750 (Tex. Crim. App. 2007) (citing *Alvarado v. State*, 704 S.W.2d 36, 39 (Tex. Crim. App. 1985)). "It is not enough for the State to prove that the defendant engaged in the alleged conduct with the requisite criminal intent; the State must prove that the defendant caused the result with the requisite criminal intent." *Estrella v. State*, 546 S.W.3d 789, 795 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd) (citing *Cook v. State*, 884 S.W.2d 485, 490 (Tex. Crim. App. 1994)).

The State did not allege that Cockrell committed any act that injured Nathan. Instead, it indicted Cockrell for injury to a child by omission. "An omission that causes" the injury is an offense only if "(1) the actor has a legal or statutory duty to act; or (2) the actor has assumed care, custody, or control of a child." TEX. PENAL CODE ANN. § 22.04(b). Here, the question is whether a person can be subjected to the highest, first-degree criminal liability not for an act of their own, but for failing to secure a dangerous dog that then attacks a child that he does not know outside of his property. We think not.

An "[o]mission" is the "failure to act." TEX. PENAL CODE ANN. § 1.07(a)(34) (Supp.). In contrast to the majority of crimes that punish an action, an omission is punished only when there is "a corresponding duty to act."[3] *Billingslea v. State*, 780 S.W.2d 271, 274 (Tex. Crim. App. 1989).[4] Section 22.04, titled "Injury to a Child, Elderly Individual, or Disabled Individual," is

---

[3]The dissent discusses *Durkovitz v. State*, 771 S.W.2d 12, 13 (Tex. App.—San Antonio 1989, no pet.), for the proposition that it is a "case which upheld Section 22.04(a) liability even though the child was a stranger to the actor." Because *Durkovitz* involved a reckless act instead of any omission, the relationship between the defendant and victim was not at issue in that case. *Id.* As a result, *Durkovitz* has no bearing on the analysis of this omission case.

[4]*Billingslea* analyzed former Section 6.01(c) in the following manner:

designed to impose higher penalties associated with wrongdoings of particularly vulnerable classes of people. TEX. PENAL CODE ANN. § 22.04. In *Billingslea*, the Texas Court of Criminal Appeals analyzed Section 22.04(a)(1) in the context of an omission—failing to provide medical care—that injured the appellant's mother, an elderly individual. *Billingslea*, 780 S.W.2d at 271. The court decided that, "in the absence of an allegation reciting a concomitant statutory duty to care for an elderly person," both (1) the indictment alleging injury to an elderly person was fundamentally defective and (2) the evidence was insufficient to support the finding of guilt. *Id.* at 276. Since there was no statute requiring the appellant to obtain medical care for his mother, he could not be prosecuted for the omission. *Id.*; *see Ronk v. State*, 544 S.W.2d 123, 125 (Tex. Crim. App. 1976).

Since *Billingslea*, the Texas Court of Criminal Appeals explained that, with respect to children, "Section 22.04(b)(1) imposes a duty to act if the actor has a legal or statutory duty to prevent the injury to the child. Such is the case where the actor has a 'familial relationship.'"

---

The Penal Code's foundation for criminal omissions may be found in § 6.01, which states that a person commits an offense if he "voluntarily engages in conduct, including an act, omission, or possession." Subsection (c) provides that "a person who omits to perform an act does not commit an offense unless a statute provides that the omission is an offense or otherwise provides that he has a duty to perform the act." Stated another way, (1) a statute must provide that an omission is an offense, or (2) a statute otherwise prescribes a duty to act, and a subsequent failure to act pursuant to that duty is an offense. Since § 6.01(c) is stated in the disjunctive, it appears to provide alternative grounds for finding a criminally punishable omission. In reality, however, only the second clause is substantive.

*Billingslea*, 780 S.W.2d at 274; *see* Act of May 24, 1973, 63d Leg., R.S., ch. 399, § 6.01, 1973 Tex. Gen. Laws 883, 892. Section 6.01(c), amended in 1993, now reads, "A person who omits to perform an act does not commit an offense unless a law as defined by Section 1.07 provides that the omission is an offense or otherwise provides that he has a duty to perform the act." TEX. PENAL CODE ANN. § 6.01(c).

*Hawkins v. State*, 891 S.W.2d 257, 258 (Tex. Crim. App. 1994).[5] For example, in *Florio v. State*, the Texas Court of Criminal Appeals reversed an injury to a child conviction under Section 22.04(b)(1) because "the indictment failed to allege a parent-child relationship creating a statutory duty to act" and "[t]he record [did] not establish a statutory duty of care on the part of the appellant to the deceased [child]." *Florio v. State*, 784 S.W.2d 415, 417 (Tex. Crim. App. 1990); *see Smith v. State*, 603 S.W.2d 846, 847 (Tex. Crim. App. [Panel Op.] 1980) (finding allegations that defendants denied a child "food and nourishment and adequate medical attention" defective since they "fail[ed] to allege that the appellants had any statutory duty to act"); *see also Faulkner v. State*, No. 06-22-00087-CR, 2023 WL 2398740, at *3 (Tex. App.—Texarkana Mar. 8, 2023, no pet.) (mem. op., not designated for publication) ("[U]nder the hypothetically correct jury charge, the State was required to prove that Faulkner intentionally and knowingly, by omission, caused serious bodily injury to S.H. and that Faulkner, as S.H.'s parent, had a legal or statutory duty to protect S.H. from harm.").

A parent's statutory duty to care for a child is spelled out by the Texas Family Code. But "[f]or cases involving a defendant who is not a parent, it is essential that the State prove that the person had assumed care, custody, or control of the child." *Prescott v. State*, 123 S.W.3d 506, 513 (Tex. App.—San Antonio 2003, no pet.); *see Sada v. State*, 574 S.W.3d 524, 534 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd); *see also* S. Comm. on Crim. Just., *Bill Analysis*, Tex. S.B. 1154, 71st Leg., R.S. (1989) ("Non-parental situations in which a person's negligent

---

[5]In *Hawkins*, the Texas Court of Criminal Appeals wrote, "[B]ecause appellant was convicted of injury to a child under Section 22.04(b)(2), the State was not required to prove appellant had a duty under the Texas Family Code to protect the child victim." *Hawkins*, 891 S.W.2d 257. This reinforces this Court's decision that, under Section 22.04(b)(1), the State must prove that a defendant has a statutory duty to protect the child victim.

care led to the harm of another are not circumscribed by law and do not come within the purview of Section 22.04.").[6]

## II.  There Was No Allegation or Proof of the Statutory Elements[7]

The indictment in this case alleged that Cockrell,

hereinafter referred to as the Defendant, heretofore on or about <u>September 5, 2022</u>, did then and there, intentionally or knowingly by omission, cause <u>serious bodily injury</u> to [Nathan Smith], <u>a child 14 years of age or younger,</u> by <u>allowing a canine dangerous to humans and/or livestock to roam free</u> and/or <u>failed to register the dangerous dog with the animal control authority for the area in which the dog is kept</u> and/or <u>failed to restrain the dangerous dog at all times on a leash in the immediate control of a person or in a secure enclosure and/or failed to obtain liability insurance coverage or show financial responsibility of at least $100,000 to cover damages resulting from an attack by the dangerous dog causing bodily injury to a person and provide proof of required liability insurance coverage or financial responsibility to the animal control authority for the area in which the dog is kept</u> and/or <u>comply with an applicable municipal or county regulation, requirement, or restriction on dangerous dogs</u> and Defendant had a statutory or legal duty to act, <u>namely:  Texas Health and Safety Code Chapter 822.042(a) and/or Texas Health and Safety Code Chapter 822.042(b).</u>[8]

The State's indictment did not allege that Cockrell had care, custody, or control of Nathan.  As a result, it was required to show that Cockrell had a statutory duty to act.  *See* TEX. PENAL CODE ANN. § 22.04(b).  During oral argument, the State argued that any statute can create a statutory duty to act, but agreed that, to date, no case supports its proposition since every injury to a child case has looked to the Texas Family Code to supply the statutory duty and, as a result,

---

[6]The dissent also cites to *Williams v. State*, 235 S.W.3d 742, 753–54 (Tex. Crim. App. 2007), which discussed cases involving either acts instead of omissions, or omissions involving a familial relationship or a defendant who had care, custody, or control of a child.  As a result, *Williams* does not assist in the analysis of this omission case.

[7]The standard of review for legal sufficiency of the evidence is recited in Cockrell's companion cause number 06-23-00229-CR and is incorporated here by reference.

[8]The State does not explain how failing "<u>to obtain liability insurance coverage or show financial responsibility of at least $100,000</u>" can cause injury to a child.

6

requires some familial relationship. Yet, when pressed, the State maintained that any statute could supply liability for an omission because the familial relationship requirement is not expressly contained within Section 22.04(b)(1). If the State's interpretation is correct, any violation of the Texas Transportation Code, such as speeding or failure to stop at a stop sign, could result in first-degree liability for injury to a child if a child is injured as a result. In our view, such an interpretation is unsupported by any caselaw.

As for the statute relied on by the State in this case, we initially note that nothing in Section 822.042 itself provides that omissions under that Section constitute a criminal offense.[9] *See* TEX. HEALTH & SAFETY CODE ANN. § 822.042.[10] For this reason, the State "[a]dmit[s]" that this statute "does not explicitly state a criminal responsibility/punishment for failure to uphold the legal duty contained within." Yet, the State is attempting to use that statute to impose first-degree criminal liability, a result inconsistent with existing law. Moreover, Section 822.042 contains no statutory duty to prevent injury to Nathan, which is what the injury to a child statute requires.[11] *See State v. Guevara*, 137 S.W.3d 55, 57 (Tex. Crim. App. 2004) (discussing *Billingslea*); *Hawkins*, 891 S.W.2d at 258; *Florio*, 784 S.W.2d at 417.

---

[9]While Section 822.045 imposes misdemeanor liability, that Section was mentioned by neither the State's indictment nor the jury charge. *See* TEX. HEALTH & SAFETY CODE ANN. § 822.045. As a result, the State did not use Section 822.045 as the basis of any statutory duty to act.

[10]Instead, the owner of a dangerous dog who fails to comply with Section 822.042(a)'s requirements to properly register the dog, restrain it, maintain the required insurance, or comply with municipal or county regulations related to dangerous dogs must "deliver the dog to the animal control authority not later than the 30th day after the owner learns that the dog is a dangerous dog." TEX. HEALTH & SAFETY CODE ANN. § 822.042(a)–(b).

[11]Section 822.042 states the following:

(a)      Not later than the 30th day after a person learns that the person is the owner of a dangerous dog, the person shall:

7

To summarize, the State had to show that Cockrell either had a statutory duty to act to protect Nathan or had assumed his care, custody, or control.[12] Here, the State did neither. Accordingly, we sustain Cockrell's points of error arguing that the State did not allege or prove the necessary elements to support his conviction. As a result, we must reverse the judgment convicting Cockrell of this offense.

## III.    Conclusion

We reverse the judgment convicting Cockrell of injury to a child and render a judgment of acquittal.

Scott E. Stevens
Chief Justice

---

(1)    register the dangerous dog with the animal control authority for the area in which the dog is kept;

(2)    restrain the dangerous dog at all times on a leash in the immediate control of a person or in a secure enclosure;

(3)    obtain liability insurance coverage or show financial responsibility in an amount of at least $100,000 to cover damages resulting from an attack by the dangerous dog causing bodily injury to a person and provide proof of the required liability insurance coverage or financial responsibility to the animal control authority for the area in which the dog is kept; and

(4)    comply with an applicable municipal or county regulation, requirement, or restriction on dangerous dogs.

(b)    The owner of a dangerous dog who does not comply with Subsection (a) shall deliver the dog to the animal control authority not later than the 30th day after the owner learns that the dog is a dangerous dog.

TEX. HEALTH & SAFETY CODE ANN. § 822.042(a)–(b).

[12]While the dissent would reform Cockrell's conviction to reckless injury to a child by omission, such reformation is not possible without allegation or proof that Cockrell either had a statutory duty to act to protect Nathan or had assumed his care, custody, or control.

8

DISSENTING OPINION

Cockrell's conduct was reprehensible. That does not mean it was a first-degree felony under the untested legal theory used by the State, a theory which the State says it could apply to every Texan. On that, I agree. But I cannot agree with the majority completely.

I am disturbed by Cockrell's argument that he had no duty because the child was not his. Cockrell's dogs had a long history of terrorizing the neighborhood. Under Section 822.042(a)(2) of the Texas Health and Safety Code, Cockrell had a statutory duty to keep his dogs in a "secure enclosure." TEX. HEALTH & SAFETY CODE ANN. § 822.042(a)(2). Had Cockrell complied with that duty, his dogs never would have mauled the child.

Where the majority and I differ is over whether that duty can be imported into Section 22.04(b)(1) of the Texas Penal Code for purposes of Section 22.04(a) injury to a child by omission. *See* TEX. PENAL CODE ANN. § 22.04(a), (b)(1). Under Section 22.04(b)(1), a person can be liable for Section 22.04(a) injury to a child by omission "if" that person "has a legal or statutory duty to act." TEX. PENAL CODE ANN. § 22.04(b)(1).

The plain text of Section 22.04(b)(1) itself does not limit which duties may be imported.

That is what gives rise to my disagreement with my colleagues.

Section 22.04 was amended in 1989. *See* Act of May 29, 1989, 71st Leg., R.S., ch. 357, § 1, 1989 Tex. Gen. Laws 1441, 1441. In that amendment, the Texas Legislature did two things relevant to this case. The first thing was the addition of an *omission-specific* list of mental states to Section 22.04(a) ("intentionally, knowingly, or recklessly"). *Id.* In this case, the State

9

conceded intentionally[13] and abandoned recklessly.[14]  Therefore, in order for the first-degree-felony conviction of Cockrell to stand, the State would have had to allege and prove a "knowingly" case.  TEX. PENAL CODE ANN. § 22.04(e).  The second thing the Legislature did was to add Section 22.04(b) so that omission liability was limited to those who, under Section 22.04(b)(1), had a "legal or statutory duty to act" or to those who, under Section 22.04(b)(2), had "assumed care, custody, or control of a child."  Act of May 29, 1989, 71st Leg., R.S., ch. 357, § 1, 1989 Tex. Gen. Laws 1441, 1441.

In the nearly thirty-five years since then, two things are true:

First, there has *never* been a case *approving* the importation of a non-familial duty into Section 22.04(b)(1).  Instead, the imported-duty omission convictions on record have been for duties imposed under the Texas Family Code.  *See, e.g.*, *Prescott v. State*, 123 S.W.3d 506, 512 (Tex. App.—San Antonio 2003, no pet.).  The State conceded this in oral argument.

Second, there has *never* been a Section 22.04(b)(1) case squarely *rejecting* an importation of a non-familial duty.  Granted, there have been cases discussing which duties may be imported under Section 22.04(b)(1).  But they have *not* been non-familial Section 22.04(b)(1) cases.  They have been parent cases which therefore did not present the question of non-familial duties,[15] or

---

[13]The State argues in its brief that "it is reasonable to conclude that the record here does not support intentional conduct—or at least intentional conduct towards the victim."

[14]The State initially charged Cockrell with recklessly causing injury to a child by omission.  But the State then charged Cockrell with intentionally or knowingly causing injury to a child by omission and proceeded to trial on that theory.

[15]*See, e.g.*, *Prescott*, 123 S.W.3d at 512.

10

Section 22.04(b)(2) "care, custody, or control" cases,[16] or they have predated the 1989 amendment.[17] Of those cases discussing Section 22.04(b)(1), *Hawkins*, to me, is the strongest. But I do not see *Hawkins* or any of the other non-Section 22.04(b)(1) cases as being conclusive. For example, in *Hawkins*, the question was whether the State had to prove a statutory familial relationship when bringing a Section 22.04(b)(2) "care, custody, or control" case. *Hawkins*, 891 S.W.2d at 258 (quoting TEX. PENAL CODE ANN. § 22.04(b)(2)). Consequently, the focus in *Hawkins* was on determining the plain meaning of Section 22.04(b)(2) and not on determining the full extent of Section 22.04(b)(1). *Id.* at 259 ("We hold the plain meaning of Section 22.04(b)(2) does not require that the actor possess a duty under the Texas Family Code to protect the child victim.").

Two other things are also true.

First, there is a pre-1989 case which upheld Section 22.04(a) liability even though the child was a stranger to the actor. The case involved a lion getting loose among children. Second, that case was cited with approval in 2007 by the Texas Court of Criminal Appeals.

As outrageous as the lion-on-the-loose scenario may sound, it actually happened. *Durkovitz v. State*, 771 S.W.2d 12, 13–14 (Tex. App.—San Antonio 1989, no pet.).[18] It resulted

---

[16]*Hawkins*, 891 S.W.2d at 258.

[17]*Billingslea*, 780 S.W.2d at 274; *Florio*, 784 S.W.2d at 417.

[18]Our sister court described the incident this way:

> Appellant, an experienced animal trainer, took his 350 pound grown lion to the Texas Flea Market in Houston on eight different occasions for the purpose of charging patrons to be photographed with the lion. On October 10, 1987, although he was aware that the lion posed a significant danger for children because of it's [sic] predator instinct, and that many children were

in pre-amendment Section 22.04(a) liability. *Id.* In 2007, the Texas Court of Criminal Appeals included a lion-on-the-loose among a catalog of "factual scenarios in which the jury could conclude that the defendant consciously disregarded a substantial and unjustified risk of serious injury to a child." *Williams*, 235 S.W.3d at 753–54. The Texas Court of Criminal Appeals cataloged those scenarios in the process of explaining what is required to sustain a conviction for *reckless* injury to a child under Section 22.04(a)(1). *Id.* at 750. The Texas Court of Criminal Appeals held that "[t]o sustain a conviction for reckless injury to a child the evidence must prove that a defendant recklessly, by act *or omission*, caused serious bodily injury to a child." *Id.* (emphasis added). After cataloging cases, the Texas Court of Criminal Appeals held that "conscious risk creation" amounted to recklessness. *Id.* at 755. The Texas Court of Criminal Appeals said that "conscious risk creation" is a state of mind which "resembles acting knowingly in that a state of awareness is involved, but the awareness is of risk, that is of a probability less than substantial certainty." *Id.* (citation omitted).

*Durkovitz* and *Williams*, though, do not directly address the issue before the Court either, in the sense that *Durkovitz* is an injury to a child *by act* case that predates the 1989 amendments, and *Williams* was a parent case. But to me, those cases are still relevant to the analysis and, *factually*, are closer to the present situation than *Hawkins*.

---

at the flea market, appellant nevertheless took the lion out of its cage into the flea market, attempting to control the lion by only a short, heavy chain.

On the afternoon of October 19, because the lion had become increasingly frisky and restless, appellant attempted to lead the lion through the main aisle to the front doors of the flea market, although it was still full of people, including many children. Appellant lost control of the lion, which grabbed the minor complainant and attempted to crush her head into its mouth.

*Durkovitz*, 771 S.W.2d at 13–14.

Cockrell urges that he had no duty because the child was not his. But *Durkovitz* upheld a Section 22.04(a) conviction even though there was no allegation that the man who let the lion loose knew the child the lion attacked. *Durkovitz*, 771 S.W.2d at 14.

Likewise, *Williams* involved a parent accused of injury to a child by omission, but it determined the mental state applicable to all Section 22.04(b) actors, parent or not, by examining the Section 22.04(a) omission mens rea. *Williams*, 235 S.W.3d at 755.

Conscious risk creation, as explained by *Williams*, amounts to recklessness, but falls short of a knowing mens rea. *Id.*

To me, Cockrell's repeated refusals to pen his dogs amounted to *Williams's* conscious risk creation, so I would not close the door on the prosecution of Cockrell, and those like him, for reckless injury to a child. But recklessness falls short of what the State was required to prove in order to sustain a first-degree-felony conviction. *See* TEX. PENAL CODE ANN. § 22.04(e). Reckless injury to a child by omission is a second-degree felony. *Id.*

**Conclusion**

As best I can tell, this is the first case to actually test whether non-familial duties can be imported via Section 22.04(b)(1). *See* TEX. PENAL CODE ANN. § 22.04(b)(1). So, one way or the other, this case was going to set out on a new path. That is not the same as creating precedent. The majority comes down on the side of making this the first rejection of an actual attempt to import a non-familial duty via Section 22.04(b)(1). The majority does so via an unpublished opinion.

Had I my way, *Cockrell* would be the first approval of a non-familial duty being imported under Section 22.04(b)(1). Were it not for the trial on analogous facts having already been blazed by the *Williams* discussion of *Durkovitz*, I would not do so. That said, I agree with the majority that the resolution of this case should be unpublished.

Legally, *Hawkins* took a plain language approach to Section 22.04(b)(2), holding that "care, custody, or control" meant that, and no more. *Hawkins*, 891 S.W.2d at 259 (citing *Boykin v. State*, 818 S.W.2d 782 (Tex. Crim. App. 1991)). A similar plain reading of Section 22.04(b)(1) would mean that any "legal or statutory duty" could be imported for purposes of injury to a child by omission under Section 22.04(a). *See id.* at 258.

I would not go that far, though. I would resolve this case, but not set precedent.

Whether other duties could be imported under other circumstances, I would leave for another day. A broader overview would be needed for that, both across the statutory scheme of the Texas Penal Code as a whole[19] and across time and the various revisions of Section 22.04 of the Texas Penal Code.[20] As for the parade of horribles which might ensue were the State to get its way, I take some solace in the way *Williams* emphasized the mens rea requirements the Texas Legislature attached in 1989 to Section 22.04(a) injury to a child by omission. *Williams*, 235

---

[19]*See Diruzzo v. State*, 581 S.W.3d 788, 799 (Tex. Crim. App. 2019) (quoting *Cheney v. State*, 755 S.W.2d 123, 126 (Tex. Crim. App. 1988)) ("It is a settled rule of statutory interpretation that statutes that deal with the same general subject, have the same general purpose, or relate to the same person or thing or class of persons or things, are considered as being *in pari materia* though they contain no reference to one another, and though they were passed at different times or at different sessions of the legislature.").

[20]"[A]ppellate courts are constrained to construe a statute that has been amended as if it had originally been enacted in its amended form, mindful that the Legislature, by amending the statute, may have altered or clarified the meaning of earlier provisions." *Powell v. Hocker*, 516 S.W.3d 488, 493 (Tex. Crim. App. 2017) (orig. proceeding) (citation omitted).

S.W.3d at 753.  In sum, while I see enough in *Durkovitz* and *Williams* to guide the disposition of Cockrell's case, I would want more before settling on a construction of Section 22.04(b)(1).

I would, therefore, reverse Cockrell's conviction for the first-degree felony of knowing injury to a child by omission.  I would modify the conviction to reckless injury to a child by omission, which is a second-degree felony.  *See* TEX. PENAL CODE ANN. § 22.04(e).  I would remand to the trial court for re-assessment of punishment within that range, by judge or jury as elected by Cockrell.  *See Walker v. State*, 594 S.W.3d 330, 338–39 (Tex. Crim. App. 2020).


Jeff Rambin
Justice


Date Submitted:     June 12, 2024
Date Decided:       August 8, 2024

Do Not Publish

15