Terry HAWKINS, Appellant,

v.

The STATE of Texas, Appellee.

No. 954–93.

Court of Criminal Appeals of Texas, En Banc.

June 22, 1994.

Petition for Discretionary Review Denied Jan. 25, 1995.

Stuart C. Shelton (Court-appointed), Bowie, for appellant.

Barry S. Green, Dist. Atty., Lindy Borchardt, Asst. Dist. Atty., Robert Huttash, State's Atty., and Matthew W. Paul, Asst. State's Atty., Austin, for State.

## OPINION ON STATE'S PETITIONS FOR DISCRETIONARY REVIEW

McCORMICK, Presiding Judge.

Appellant was convicted for the offense of injury to a child. V.T.C.A., Penal Code, Section 22.04(b)(2). Appellant was sentenced to 20 years in prison. The Fort Worth Court of Appeals reversed appellant's conviction and ordered an acquittal. *Hawkins v. State*, 855 S.W.2d 881 (Tex.App.—Fort Worth 1993). We granted discretionary review to determine if the Court of Appeals erred in holding appellant had no legal duty to remove the infant victim from the abusive parent where appellant had no "familial relationship" with the infant, but had exercised care, custody and control over the infant. We will reverse.

Appellant was the live-in boyfriend of Theresa Hutchins, the biological mother of the infant victim. On four different occasions, Hutchins beat the infant in the presence of appellant. Appellant never attempted to prevent these attacks nor remove the infant from the abusive parent during the attacks. During the final attack, Hutchins swung her infant by its feet and struck its head against the arm of a couch causing permanent brain damage. The State accused appellant of injury to a child by failing to remove the child from the abusive mother, and alleged appellant had a duty to remove the child because he had assumed care, custody, and control of the child under Section 22.04(b)(2), *supra.* See also V.T.C.A., Penal Code, Section 22.04(a)(1).

The Court of Appeals concluded the State alleged appellant's duty to act under a "familial relationship theory." See V.T.C.A., Family Code, Section 11.03(a)(8); V.T.C.A., Penal Code, Section 22.04(b)(2). Because appellant was not the infant's biological father, was not Hutchins' husband, and had not lived with the infant for more than six months before the incident occurred, the Court of Appeals ruled appellant had not established, at the time of the incident, a "familial relationship" with the infant and had no legal means to remove the victim. *Hawkins v. State*, 855 S.W.2d at 882.

■ The State contends Section 22.04(b)(2) of the Texas Penal Code is not subject to the "familial relationship" requirement of Section 11.03(a)(8) of the Texas Family Code. We agree. Section 22.04 of the Texas Penal Code states in pertinent part:

"(a) A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by *omission*, causes to a child, elderly individual, or invalid individual:

"(1) serious bodily injury;

"(2) serious physical or mental deficiency or impairment;

"(3) disfigurement or deformity; or

"(4) bodily injury.

"(b) An *omission* that causes a condition described by Subsections (a)(1) through (a)(4) of this section is conduct constituting an offense under this section if:

"(1) the actor has a legal or statutory duty to act; or

"(2) the actor has assumed care, custody, or control of a child, elderly individual, or invalid individual." (emphasis added)

Section 22.04(b)(1) imposes a duty to act if the actor has a legal or statutory duty to prevent the injury to the child. Such is the case where the actor has a "familial relationship" with the child as provided for in Section 11.03(a)(8) of the Texas Family Code.

Section 22.04(b)(2) creates a duty to act if the actor has assumed care, custody, or control of the child. "The actor has assumed care, custody, or control if he has by act, words, or course of conduct acted so as to cause a reasonable person to conclude that he has accepted responsibility for protection, food, shelter, and medical care for a child, elderly individual, or invalid individual." V.T.C.A., Penal Code, Section 22.04(d). Under the above definition, no "familial relationship" is necessary to show a legal duty to act. We hold the plain meaning of Section 22.04(b)(2) does not require that the actor possess a duty under the Texas Family Code to protect the child victim. See generally *Boykin v. State*, 818 S.W.2d 782 (Tex.Cr.App.1991).

■ Here, because appellant was convicted of injury to a child under Section 22.04(b)(2), the State was not required to prove appellant had a duty under the Texas Family Code to protect the child victim. The Court of Appeals' decision is therefore reversed and the case remanded to the Court of Appeals for its further consideration in light of this opinion.

CLINTON, Judge, concurring.

There is more than meets the eye of the majority of the Court.

The indictment in this cause alleged that on or about March 22, 1991, appellant:

"... did then and there intentionally and knowingly, by omission, engage in conduct that caused serious bodily injury to ... a child younger than fourteen (14) years of age, by failing to provide protection for the said [child], to-wit: *by failing to remove the said [child] from the presence of Teresa Hutchins* aka Teresa Hawkins when he knew that Teresa Hutchins aka Teresa Hawkins was a threat to the health and safety of said [child] and Terry Hawkins

had then and there assumed care, custody, and control of [the child.]"

*Hawkins v. State*, 855 S.W.2d 881 (Tex. App.—Fort Worth 1993).[1]

From an amalgamation of briefs of the parties and portions of the record, we may glean germane facts not seriously in dispute, *viz:* In the Fall of 1990 appellant was twenty seven years of age; he was still married to, but separated from, a woman with whom he had a child now three years old. Teresa Hutchins was also married, but separated from, a man with whom she had a daughter and who would be the father of the child she was then expecting. Appellant and Hutchins renewed a prior relationship when she came to visit his home, and thereafter they began dating in the latter part of 1990. Soon they were living together, and in early 1991 she gave birth to her second child, the victim in this cause.

Hutchins was receiving federal assistance, including food stamps, AFDC and Medicaid; appellant was unable to find construction work. They moved to Wise County for appellant to seek work, and set up house in a mobile home. Appellant referred to Hutchins as "my old lady" and treated her children as his own. He found a job, provided food and shelter for Hutchins and the children, and appropriately disciplined the daughter "with the permission of her [mother]." Hutchins tended to her new baby boy. However, appellant "never felt he accepted responsibility for [the children]" since Hutchins "took care all the matters involving her children and herself." IV S.F. 644.

Apparently all in March, appellant observed three instances when Hutchins engaged in what the prosecution characterizes as "acts of abuse" to the baby boy. See *Hawkins v. State*, supra, at 881, n. 2.[2] Be-

---

1. All emphasis throughout this opinion is mine unless otherwise indicated.

2. In the court of appeals the State, through its local district attorney, represented that the victim was *"severely beaten"* by his mother. State's Brief at 1. Later in the same paragraph it says that over the course of several weeks appellant witnessed "numerous acts of abuse" at the hands of his mother, and in context it is fairly clear that the writer was not then equating the prior "acts

of abuse" with being "severely beaten." *Id.,* 1–2. Nonetheless, in its petition for discretionary review a different writer says the mother "severely beat the child on three occasions in the presence of [appellant] with the final one occurring on April 5 1991." State's PDR, at 1–2.

The common source of those representations is the written statement of appellant taken by a Texas Ranger. State's Exhibit 13, III S.F. 502, at 512–521; V S.F. 926. Suffice to say that the court of appeals did not so construe his state-

cause appellant testified that he had "no idea" that what occurred on April 5 was likely to happen, the prosecutor confronted him with each instance *seriatim*. Appellant responded, respectively, (1) that he "thought the situation there was under control;" (2) that he had "no idea;" (3) that he thought "she had just slipped her grip," he did not think it was "done on purpose," but did tell her "not to treat the baby that way" since that would be considered "rough, in my opinion." IV S.F. 624–627. To his admonition Hutchins retorted, "It's my goddam kid and you don't worry about it." III S.F. 520; State's Exhibit 13, at 6, V S.F. 926.

The State's theory of prosecution, that on or about *March 22, 1991,* appellant "failed to remove the [child] from the presence of [his mother]," is based essentially on that third incident. See Court's Charge, part V, Tr., at 40.

Because appellant did not consider "calling anybody or getting any kind of help at any of those points" since "it wasn't my children," he felt there "really wasn't much I could do." At the time he could not think of what he could have done to prevent such instances in the future. He had heard of "a child being removed from a home by the State," but did not know how it was done; he did not know it possible "to report a case of child abuse," made no attempt to do so; he never tried to find out whether there was any place to report it "anonymously or otherwise;" he never did "try to take the baby away from [his mother]" or "to stand between her and the baby or take him away or anything of that sort." IV S.F. 643–646.

As a result of bodily injury inflicted on or about April 5, the seven week old boy suffered permanent brain damage, but survived.

Both the indictment and the charge of the Court focus on "failing to provide protection" to the child, specifically "by failing to remove the [child] from the presence of [his mother.]" Tr. 1 and 40–42.

Appellant contended in his motion in arrest of judgment and in the court of appeals

that there was no proof he had a right to take personal possession of the child to remove him from the presence of his mother, and thus cannot be punished for failure to do so; further, that in the premises he had no standing to file an action under the Texas Family Code, Chapter 11, for a managing conservatorship of the child. Therefore, he was without lawful means of taking the child from its mother. Appellant's Brief, Point of Error 4, at 18 ff.

The State responded in essence that the evidence was sufficient to show that appellant assumed the duty to protect the child and failed to remove the child from the presence of its mother "intending or knowing that serious bodily injury would result." State's Brief, Point of Error 5, at 11. As to appellant's "ability" to act the State asked rhetorically: "Why would the Legislature first create a duty to prevent the injury to a child or other person, but then not also give the actor the legal right or 'ability' to stop the injury by whatever means might be necessary?" The State argued that "[e]very person legally has the 'ability' to stop child abuse because such an act would be justified under current law," citing sections 9.02, 9.22, 9.31, 9.32 and 9.33. The State concluded: "Coupled with that ability to act is a statutory duty to act when the person has assumed care, custody, or control of a child—and possible criminal liability when such a person failed to act." *Id.,* at 12–13. The State adds, "Appellant makes no claim that he did not have the physical ability to remove [the child] from danger," pointing out that appellant never made any attempt "to remove the child or stop the abuse[;]" rather he tried to justify "his perceived lack of 'ability' to intervene[.]" *Id.,* at 13.

The court of appeals dismissed what it characterized as the State's "familial relationship theory," in favor of its view that appellant "had no legal means to remove the child because he was not the child's father, was not Hutchins' husband, and had not lived with the child for more than six months when the incident occurred," as required by the Fami-

ment. Compare *Hawkins v. State,* note 3, and accompanying text. Neither should the majority

here. Majority Opinion at 258.

ly Code. Accordingly, the court of appeals concluded:

> "... In essence, the State is asking this court to impose upon Hawkins parent-child duties without the benefits of family code remedies. We cannot do this because when the accused is unable to perform the act which he is accused of omitting, he lacks the necessary means rea for the offense. See *Montgomery v. State*, 376 S.W.2d 839, 841 (Tex.Cr.App.1964)."

*Hawkins*, supra, at 880.

In these circumstances for this Court to conclude only that State was not required to prove a duty under the Texas Family Code, majority opinion, at 259, is not enough to resolve the truly troubling questions also presented in this cause regarding the meaning and practical functional operation of § 22.04(b)(2).[3] Because the State specifically urges this Court to construe § 22.04(b)(2) and related provisions, we should address the issues raised and submitted in briefs and oral argument. Alternatively, since the cause must be remanded, we ought to give the court of appeals the opportunity to reconsider its initial reasons and disposition in light of the opinion of this Court concerning the role of § 22.04(b)(2).

Accordingly, I concur only in that part of the judgment reversing the judgment of the court of appeals.

MALONEY and MEYERS, JJ., joins.

CAMPBELL, Judge, concurring.

I join the opinion of the Court, but I write separately to make a few additional comments.

Someone once said that the moral test of a society is how it treats those in the dawn of life, its children, those in the twilight of life, the aged, and those in the shadows of life, the sick and the disabled. The Texas Legislature responded to that moral challenge, in part, by enacting Penal Code § 22.04, which was, and is, intended to protect the young, the old, the sick, and the disabled from abuse at the hands of those very people who are supposed to take care of them.

At the time of the offense in question, § 22.04 provided in relevant part:

> (a) A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or *intentionally, knowingly, or recklessly by omission*, ... causes to a child, elderly individual, or invalid individual:
>
> (1) serious bodily injury;
>
> (2) serious physical or mental deficiency or impairment;
>
> (3) disfigurement or deformity; or
>
> (4) bodily injury.
>
> (b) *An omission that causes a condition described by Subsections (a)(1) through (a)(4) of this section is conduct constituting an offense under this section if:*
>
> (1) the actor has a legal or statutory duty to act; or
>
> (2) *the actor has assumed care, custody, or control of a child, elderly individual, or invalid individual.*
>
> (c) In this section:
>
> (1) "Child" means a person 14 years of age or younger.
>
> (2) "Elderly individual" means a person 65 years of age or older.

> "... [T]he creation of a duty to act automatically gives a person the means to act. Further, every person has the right and means to prevent injury to another. *See generally Tex.Penal Code* Chapter 9. Once a duty was created to prevent the injury to the child, there is no question that he had the 'legal means' to remove the child from the abusive mother. That is, he had the 'means' to do such things as contact Child Protective Services or physically pick up the child and remove him to another room."

*Id.*, at 10. The State Prosecuting Attorney argues to the same effect. State's Brief on the Merits, at 7, 10.

---

**3.** The reason given by the local district attorney for granting review is based on Tex.R.App.Pro. 200(c), and he submits the following important question of law, *viz:*

> "[D]oes section 22.04(b) ... mean what it says, to-wit, that a person can be held criminally responsible for his failure to act if he has assumed care, custody and control over a child even if he would otherwise have no statutory or legal duty to act."

PDR, at 3. The State Prosecuting Attorney submits substantially the same reason, as well as others. PDR, at 6–7.

In his brief the district attorney argues:

(3) "Invalid individual" means a person older than 14 years of age who by reason of age or physical or mental disease, defect, or injury is substantially unable to protect himself from harm or to provide food, shelter, or medical care for himself.

(d) *The actor has assumed care, custody, or control if he has by act, words, or course of conduct acted so as to cause a reasonable person to conclude that he has accepted responsibility for protection, food, shelter, and medical care for a child, elderly individual, or invalid individual.*

(Emphasis added.)[1] Thus, as the Court's opinion today states, § 22.04(b)(2) "creates a duty to act if the actor has assumed care, custody, or control" of a child, elderly individual, or invalid individual. Even then, a defendant may not be convicted for an omission that indirectly causes injury unless that omission was accompanied by a requisite mental element.

On April 12, 1991, the Wise County grand jury indicted appellant for violating § 22.04(a)(1). The indictment alleged that appellant

did ... intentionally and knowingly, by omission, ... cause[ ] serious bodily injury to Richard Hutchins, a child younger than fourteen (14) years of age, by failing to provide protection for the said Richard Hutchins, to-wit: by failing to remove the said Richard Hutchins from the presence of Teresa Hutchins aka Teresa Hawkins when he knew that Teresa Hutchins aka Teresa Hawkins was a threat to the health and safety of the said Richard Hutchins, and Terry Hawkins had then and there assumed care, custody, and control of Richard Hutchins.

The evidence at appellant's trial told a disgustingly familiar tale of social woe so common in the late 20th Century: In 1990, appellant, then 27 years old, was married but separated from a woman with whom he had had a child. Teresa Hutchins, too, was married but separated from a man with whom she had had a daughter and with whom she was then expecting another child. Appellant was unemployed and apparently had no in-

come, but Hutchins was receiving governmental assistance in the form of food stamps, welfare payments, and Medicaid payments. Appellant and Hutchins, who had known one another sometime before, began to date during this period and were soon living together.

In early 1991 Hutchins gave birth to her second child, Richard. Around this time, appellant and Hutchins moved into a mobile home in Wise County. Appellant found work and provided some money for the children and Hutchins, to whom he referred as his "old lady." Appellant disciplined Hutchins' daughter and generally treated her children as his own—although at trial appellant denied ever "accepting responsibility" for the children.

In March 1991, appellant observed three instances in which Hutchins handled seven-week-old Richard in a seriously improper manner. As the court of appeals explained:

On one occasion Hutchins picked the baby up from the sofa by the shirt and dropped it back down to keep it quiet. On another occasion the baby was lying on the sofa and would not take its bottle and Hutchins grabbed it by the shirt collar and tossed it against the corner of the sofa, three different times. On the occasion preceding the one causing [injury], the baby was crying and Hutchins picked it up and let it drop four feet to the blanket below.

*Hawkins v. State,* 855 S.W.2d 881, fn. 2 (Tex.App.—Fort Worth 1993). Despite witnessing these three occurrences, appellant took no steps to ensure the baby's safety. And, on April 5, 1991, Hutchins, again in appellant's presence, swung the baby by his feet and struck his head against the arm of a sofa, causing permanent injury to his brain. It was this incident that led to appellant's indictment.

It is plain to me that § 22.04(b)(2) was designed specifically to cover situations such as these. Live-in partners of abusive adults can no longer sit idly while defenseless children—or adults—are abused and injured. Those who do violate our law and deserve our condemnation and scorn.

1. In 1991 the Legislature amended § 22.04 in a manner not relevant to this discussion.

MILLER, Judge, dissenting.

Because I believe the majority opinion focuses on the incorrect issue in this case, and further, that it imposes a duty to act without providing a legal means to act, I am compelled to dissent.

Appellant was convicted of injury to a child. The indictment alleged that appellant "failed to remove Richard Hutchins from the presence of Teresa Hutchins." The indictment does not allege that appellant had a duty to remove the child from his mother. The majority concludes that the State was not required to prove that the appellant had a duty under the Family Code to protect the victim in order to convict appellant of the crime as alleged in the indictment. However, in order for appellant to be guilty of a crime by omission, he must have some means by which to act, and then fail to utilize those means. Under Section 22.04, an omission can amount to an offense if the actor has "assumed care, custody, or control of a child." V.T.C.A., Penal Code, Section 22.04(b)(2). However, the statute fails to provide a legal method for such an actor to remove the child. The court of appeals correctly concluded that appellant lacked the necessary mens rea for the offense, since he was unable to remove the child from his mother by legal means.

The majority opinion focuses on the "assumed care, custody and control" language of the injury to a child statute. V.T.C.A., Penal Code, Section 22.04(d). The majority incorrectly assumes that the Court of Appeals' opinion relies on the lack of a familial relationship to find that appellant cannot be found guilty of this crime by omission. However, the Court of Appeals' opinion only states that the appellate court believed the State advanced a familial relationship theory. The appellate court's opinion does not rely on such a theory. The court determined that, regardless of this theory, appellant had no legal means by which to act to remove the child from his mother and, thus, could not be found guilty by omission.

The majority carelessly dismisses this case as a simple situation of strict criminal liability based on appellant's actions in accepting the child victim, Richard Hutchins, into his home. However, the statue does not actually address the situation presented in appellant's case. Section 22.04(b)(2) makes an omission an offense if "the actor has assumed care, custody or control of a child, *elderly individual, or invalid individual.*" (emphasis added). Clearly the statute was written to protect people who are unable to take care of themselves, and have no one to guard their interests. However, appellant's case involves a situation where appellant has taken a child into his home under the guardianship of the child's natural mother. Thus, while appellant did assume some control of the child, as defined in the Penal Code in Section 22.04(d), there was a parent on hand with superior legal responsibility for the child. Thus, appellant should not be guilty of this crime by omission where the child's mother injured the child.

Further, the majority asks appellant to do the impossible, holding that appellant has a legal duty to act, under Section 22.04(b)(2), despite the fact that appellant had no legal power to act. Specifically, the indictment charged that appellant "did ... intentionally and knowingly, by omission, engage in conduct that caused serious bodily injury to a child ... by failing to remove the said [child] from the presence ..." of his mother. *Hawkins v. State*, 855 S.W.2d 881 (Tex.App.—Ft. Worth, 1993). However, appellant had no legal authority whatsoever to remove Richard Hutchins from his mother. Certainly, appellant had the physical power to act, but this does not mean he was legally empowered to so act. The Family Code sets out the rights, duties and responsibilities not only for parents but also for guardians of children. Nowhere in the Family Code would appellant have the legal ability to override the authority of the child's natural mother, Teresa Hutchins. The Penal Code should not be used to require a person to take actions he is not legally empowered to take, such as physically removing a child from his mother. The majority's decision imposes unfair and unrealistic responsibilities on persons without giving them any legal recourse.

To take this scenario to an extreme, imposing criminal liability on appellant in this context raises the specter of a dangerous result.

An actor who, without any legal protection, duty, or benefit, acts as the majority would have, and removes a child from the physical presence of his lawful parent or guardian, faces subsequent criminal charges arising from his actions of removing the child, which *could* be perceived as kidnapping. Thus, the actor is being assigned a duty to act without the full protections and benefits of the law. Unlike the majority, I am not willing to do this.

Because I believe, the Court of Appeals correctly determined that there were no legal means by which appellant could remove the child, thus depriving appellant of the mens rea to commit the crime of injury to a child by failure "to remove Richard Hutchins from the presence of Teresa Hutchins," I would affirm the judgment of the Court of Appeals. Accordingly, I dissent.

OVERSTREET, J., joins this dissenting opinion.