NO. 07-07-0141-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

SEPTEMBER 30, 2009
______________________________

DANIEL REY, 

                                                                                                 Appellant

                                                                    v.

THE STATE OF TEXAS, 

                                                                                                 Appellee
_________________________________

FROM THE 242ND DISTRICT COURT OF HALE COUNTY;

NO. B16837-0606; HON. ED SELF, PRESIDING
_______________________________

Opinion
_________________________________

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.
          This case is before us on remand from the Court of Criminal Appeals to determine
whether the evidence was legally and factually sufficient to support Daniel Rey’s conviction
for abandoning or endangering a child. In our original opinion, we reversed the judgment
because the State failed to present any evidence from which a rational jury could
reasonably conclude that appellant had care, custody or control over his stepchild. The
State petitioned the Court of Criminal Appeals for review, contending that we applied the
wrong test in analyzing the matter. The Court of Criminal Appeals agreed with the State
and held that the applicable definition of care, custody and control was that found in §
22.04(d) of the Texas Penal Code. Upon applying that definition to the issues before us,
we again reverse the judgment.
          Background
          Appellant was married to Michelle Morales with whom he fathered a one-year-old
daughter. Morales also had a three-year-old son from a prior relationship. At the time of
the incident in question, appellant had been separated from Morales for about three
months. Furthermore, while she lived in Plainview with the two children, he lived in
Muleshoe. 
          On February 23, 2006, appellant phoned Morales and told her he was going to visit. 
He arrived at her apartment around 12:30 a.m. and heard his daughter crying. Through
the window, he could also see his stepson, but, when he knocked on the door, no one
answered. At that point, the three-year-old boy informed appellant that his mother was not
there. In response, appellant broke the front window to obtain access to the abode, took
his daughter from the apartment, and drove her to Muleshoe. He claimed he left the boy
with a neighbor. However, the neighbor in question, Ramira Gamboa, testified that he
found the boy standing outside the second floor apartment near the broken glass dressed
only in jeans and a shirt (no shoes or socks) on the cold night screaming for his “father.” 
Gamboa brought the child into his apartment. A subsequent investigation of Morales’
apartment uncovered no one else present. She had indeed left the children alone.
        
 
          Applicable Law
          A person commits the offense for which appellant was convicted if, having custody,
care, or control of a child younger than 15 years, he intentionally abandons the child in any
place under circumstances that expose the child to an unreasonable risk of harm. Tex.
Pen. Code Ann. §22.041(b) (Vernon Supp. 2008). To abandon means to leave a child in
any place without providing the youth reasonable and necessary care, under
circumstances which no reasonable, similarly situated adult would leave a child of that age
and ability. Id. §22.041(a). The issue before us involves the element of custody, care, or
control. Appellant asserts that there is no evidence he had such over his stepson. We
agree.
          As previously mentioned, the definition of “custody, care, or control” applicable here
is that found in §22.04(d) of the Texas Penal Code. Rey v. State, 280 S.W.3d 265, 268
(Tex. Crim. App. 2009). According to the provision, one assumes care, custody, or control
over another “if he has by act, words, or course of conduct acted so as to cause a
reasonable person to conclude that he has accepted responsibility for protection, food,
shelter, and medical care for a child . . . .” Id. §22.04(d); Rey v. State, 280 S.W.3d at 268;
Hawkins v. State, 891 S.W.2d 257, 258-59 (Tex. Crim. App. 1994). Thus, the duty does
not have to be one imposed under the Family Code to fall within the penal provision as
appellant argues. Rey v. State, 280 S.W.3d at 268; Hawkins v. State, 891 S.W.2d at 258-59. 
 
 
          Application of Law to Facts
          The record before us reveals that appellant was still married to the child’s mother
at the time of the incident and that he had cared for the child in the past. So too had he
acknowledged to a worker for Child Protective Services (CPS) that he had been a part of
the child’s life.


 Thus, evidence existed contradicting appellant’s representation that he had
not “fostered [a] familial relationship with the child” in the past. Yet, we cannot ignore the
evidence that appellant and his wife had been separated for three months and he lived in
another town when he found the children alone. 
          Similarly noteworthy was and is the fact that appellant was simply the boy’s
stepfather, not biological father. This is of import because becoming a stepparent does
not automatically impose upon one the duty to exercise care, custody or control over a
stepchild. See McGee v. McGee, 936 S.W.2d 360, 369 (Tex. App.–Waco 1996, writ
denied) (recognizing that the stepparent must “receive” the child into the family or accept
the child as a family member before such an obligation arises); Youngblood v. Hoeffle, 201
S.W. 1057, 1058 (Tex. Civ. App.–Fort Worth 1918, no writ) (holding the same). And, the
record is bereft of any evidence indicating that appellant provided financial, emotional, or
psychological support to the stepchild after the separation. Moreover, neither party cited
us to any authority suggesting, much less requiring, that simply because a stepparent once
had care, custody or control of his stepchildren he continued to have it after separating
from their mother and living elsewhere. Indeed, most children grow, leave home, and
marry. When such happens, it seems rather unreasonable to believe that because the
parents once had care, custody or control over the grown children, they still do. So, if such
duty and authority over one’s biological children can eventually end, the same must be true
viz one’s stepchildren. And, it is for this reason we hold that simply because a stepparent
and stepchild may have had a past relationship sufficient to satisfy the requirements of
§22.04(d), that relationship and its legal ramifications do not continue once the stepparent
separates from the child’s mother and leaves the abode. Again, to be true to the dictate
of §22.04(d) and the words of Rey v. State, there must be some evidence that the requisite
relationship between stepparent and stepchild continued; it cannot be assumed. More
importantly, there is no evidence of record that appellant provided the stepchild with
financial assistance, medical care, food, emotional support, guidance, clothing, or the like. 
Indeed, the record is even bereft of evidence suggesting that appellant provided any
assistance to the child’s mother after the separation, which assistance could be used
indirectly to benefit his stepchild. 
          Next, and to the extent that one may suggest the evidence of the stepchild
purportedly calling for his “father” when appellant left evinced the requisite relationship,
they would be wrong. For us to assign any pertinent evidentiary weight to the act would
require us to assume that the child was referring to appellant, as opposed to the child’s real
father (if any). So too would it obligate us to assume that the three-year-old boy called
appellant “father” because appellant undertook acts characteristic of a father, i.e. acts
showing responsibility for the protection and welfare of the child. Neither of those can we
do since a conviction must be founded upon evidence, not assumptions. 
          Similarly empty is the evidence that appellant may have viewed himself as being
part of the child’s “life.” Whether that meant he provided for or protected the youth or
merely was present from time to time goes unmentioned. Without such explanatory
information, the phrase is too innocuous to have any evidentiary value. 
          That appellant may have broken into the apartment to rescue his own child also falls
short of filling the void.


 Simply put, that act evinces the opposite of what is required by
§22.04(d). That is, rather than illustrating effort to protect and provide for the stepchild, it
indicates an avoidance of such effort. And, one can hardly infer that by foregoing
opportunity to protect, shelter, or care for the stepchild, appellant accepted responsibility
for the child’s protection, medical care, or welfare.


 
          Leaving a three-year-old alone in the dark of night is reprehensible; there is no
doubt of that. But, if anything, it evinced acts indicative of a complete disregard for the
stepchild, not acts upon which a reasonable person could conclude that appellant accepted
responsibility for the child. Again, he saw the two children alone in the house but entered
only to secure his own child. The other simply was left behind to fend for himself,
according to the evidence accepted by the jury. While such conduct may arguably evince
activity potentially criminal under §22.041(c) of the Texas Penal Code (criminalizing an
action or omission that exposes a child under 15 to imminent danger of death, bodily injury
or physical or mental impairment), that is not the provision under which the State opted to
prosecute appellant. Instead, it chose a penal statute that obligated it to prove first the
youth was in his care, custody, or control. 
          Simply put, there is no evidence of record upon which a rational jury could 
conclude, beyond reasonable doubt, that appellant accepted the responsibility to protect,
shelter, feed and provide medical care to the three-year-old boy. See Hooper v. State, 214
S.W.3d 9, 13 (Tex. Crim. App. 2007) (discussing the applicable standard of review). Given
that, we have no choice but to reverse the judgment of the trial court and render judgment
acquitting appellant of that offense for which he was tried.
                                                                                                 
                                                                           Brian Quinn 
                                                                          Chief Justice 
Publish.