NO. 07-07-0141-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

SEPTEMBER 30, 2009

_____

DANIEL REY,

Appellant

v.

THE STATE OF TEXAS,

Appellee

_____

FROM THE 242ND DISTRICT COURT OF HALE COUNTY;

NO. B16837-0606; HON. ED SELF, PRESIDING

_____

*Opinion*

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

This case is before us on remand from the Court of Criminal Appeals to determine whether the evidence was legally and factually sufficient to support Daniel Rey's conviction for abandoning or endangering a child. In our original opinion, we reversed the judgment because the State failed to present any evidence from which a rational jury could reasonably conclude that appellant had care, custody or control over his stepchild. The State petitioned the Court of Criminal Appeals for review, contending that we applied the

wrong test in analyzing the matter. The Court of Criminal Appeals agreed with the State and held that the applicable definition of care, custody and control was that found in § 22.04(d) of the Texas Penal Code. Upon applying that definition to the issues before us, we again reverse the judgment.

*Background*

Appellant was married to Michelle Morales with whom he fathered a one-year-old daughter. Morales also had a three-year-old son from a prior relationship. At the time of the incident in question, appellant had been separated from Morales for about three months. Furthermore, while she lived in Plainview with the two children, he lived in Muleshoe.

On February 23, 2006, appellant phoned Morales and told her he was going to visit. He arrived at her apartment around 12:30 a.m. and heard his daughter crying. Through the window, he could also see his stepson, but, when he knocked on the door, no one answered. At that point, the three-year-old boy informed appellant that his mother was not there. In response, appellant broke the front window to obtain access to the abode, took his daughter from the apartment, and drove her to Muleshoe. He claimed he left the boy with a neighbor. However, the neighbor in question, Ramira Gamboa, testified that he found the boy standing outside the second floor apartment near the broken glass dressed only in jeans and a shirt (no shoes or socks) on the cold night screaming for his "father." Gamboa brought the child into his apartment. A subsequent investigation of Morales' apartment uncovered no one else present. She had indeed left the children alone.

2

*Applicable Law*

A person commits the offense for which appellant was convicted if, having custody, care, or control of a child younger than 15 years, he intentionally abandons the child in any place under circumstances that expose the child to an unreasonable risk of harm. TEX. PEN. CODE ANN. §22.041(b) (Vernon Supp. 2008). To abandon means to leave a child in any place without providing the youth reasonable and necessary care, under circumstances which no reasonable, similarly situated adult would leave a child of that age and ability. *Id.* §22.041(a). The issue before us involves the element of custody, care, or control. Appellant asserts that there is no evidence he had such over his stepson. We agree.

As previously mentioned, the definition of "custody, care, or control" applicable here is that found in §22.04(d) of the Texas Penal Code. *Rey v. State,* 280 S.W.3d 265, 268 (Tex. Crim. App. 2009). According to the provision, one assumes care, custody, or control over another "if he has by act, words, or course of conduct acted so as to cause a reasonable person to conclude that he has accepted responsibility for protection, food, shelter, and medical care for a child . . . ." *Id.* §22.04(d); *Rey v. State,* 280 S.W.3d at 268; *Hawkins v. State,* 891 S.W.2d 257, 258-59 (Tex. Crim. App. 1994). Thus, the duty does not have to be one imposed under the Family Code to fall within the penal provision as appellant argues. *Rey v. State*, 280 S.W.3d at 268; *Hawkins v. State,* 891 S.W.2d at 258-59.

*Application of Law to Facts*

The record before us reveals that appellant was still married to the child's mother at the time of the incident and that he had cared for the child in the past. So too had he acknowledged to a worker for Child Protective Services (CPS) that he had been a part of the child's life.[1] Thus, evidence existed contradicting appellant's representation that he had not "fostered [a] familial relationship with the child" *in the past*. Yet, we cannot ignore the evidence that appellant and his wife had been separated for three months and he lived in another town when he found the children alone.

Similarly noteworthy was and is the fact that appellant was simply the boy's stepfather, not biological father. This is of import because becoming a stepparent does not automatically impose upon one the duty to exercise care, custody or control over a stepchild. *See McGee v. McGee*, 936 S.W.2d 360, 369 (Tex. App.–Waco 1996, writ denied) (recognizing that the stepparent must "receive" the child into the family or accept the child as a family member before such an obligation arises); *Youngblood v. Hoeffle*, 201 S.W. 1057, 1058 (Tex. Civ. App.–Fort Worth 1918, no writ) (holding the same). And, the record is bereft of any evidence indicating that appellant provided financial, emotional, or psychological support to the stepchild after the separation. Moreover, neither party cited us to any authority suggesting, much less requiring, that simply because a stepparent once had care, custody or control of his stepchildren he continued to have it after separating from their mother and living elsewhere. Indeed, most children grow, leave home, and marry. When such happens, it seems rather unreasonable to believe that because the

---

[1]The reason given by appellant for not taking his stepson with him was that he was not the boy's father and he was afraid his wife would file charges on him.

parents once had care, custody or control over the grown children, they still do. So, if such duty and authority over one's biological children can eventually end, the same must be true *viz* one's stepchildren. And, it is for this reason we hold that simply because a stepparent and stepchild may have had a past relationship sufficient to satisfy the requirements of §22.04(d), that relationship and its legal ramifications do not continue once the stepparent separates from the child's mother and leaves the abode. Again, to be true to the dictate of §22.04(d) and the words of *Rey v. State,* there must be some evidence that the requisite relationship between stepparent and stepchild continued; it cannot be assumed. More importantly, there is no evidence of record that appellant provided the stepchild with financial assistance, medical care, food, emotional support, guidance, clothing, or the like. Indeed, the record is even bereft of evidence suggesting that appellant provided any assistance to the child's mother after the separation, which assistance could be used indirectly to benefit his stepchild.

Next, and to the extent that one may suggest the evidence of the stepchild purportedly calling for his "father" when appellant left evinced the requisite relationship, they would be wrong. For us to assign any pertinent evidentiary weight to the act would require us to assume that the child was referring to appellant, as opposed to the child's real father (if any). So too would it obligate us to assume that the three-year-old boy called appellant "father" because appellant undertook acts characteristic of a father, *i.e.* acts showing responsibility for the protection and welfare of the child. Neither of those can we do since a conviction must be founded upon evidence, not assumptions.

Similarly empty is the evidence that appellant may have viewed himself as being part of the child's "life." Whether that meant he provided for or protected the youth or

5

merely was present from time to time goes unmentioned. Without such explanatory information, the phrase is too innocuous to have any evidentiary value.

That appellant may have broken into the apartment to rescue *his own child* also falls short of filling the void.[2] Simply put, that act evinces the opposite of what is required by §22.04(d). That is, rather than illustrating effort to protect and provide for the stepchild, it indicates an avoidance of such effort. And, one can hardly infer that by foregoing opportunity to protect, shelter, or care for the stepchild, appellant accepted responsibility for the child's protection, medical care, or welfare.[3]

Leaving a three-year-old alone in the dark of night is reprehensible; there is no doubt of that. But, if anything, it evinced acts indicative of a complete disregard for the stepchild, not acts upon which a reasonable person could conclude that appellant accepted responsibility for the child. Again, he saw the two children alone in the house but entered only to secure his own child. The other simply was left behind to fend for himself, according to the evidence accepted by the jury. While such conduct may arguably evince activity potentially criminal under §22.041(c) of the Texas Penal Code (criminalizing an action or omission that exposes a child under 15 to imminent danger of death, bodily injury or physical or mental impairment), that is not the provision under which the State opted to

---

[2]Interestingly, we note the similarity between the test used in §22.041(b) and that applied in cases involving the possession of drugs. Like the former, the latter also requires proof that the drugs were in the care, custody, or control of the accused as a prerequisite to conviction. *Poindexter v. State,* 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). If one was to substitute drugs for the three-year-old, a rational jury would be hard-pressed to conclude that appellant possessed the contraband simply because he entered the home to remove the child from its presence.

[3]To the extent appellant represented that he placed the boy with a neighbor to await his mother's return, that evidence is of little benefit to the State. That evidence would negate the element requiring proof that the accused left the child in a place that exposed him to an unreasonable risk of harm.

6

prosecute appellant. Instead, it chose a penal statute that obligated it to prove first the youth was in his care, custody, or control.

Simply put, there is no evidence of record upon which a rational jury could conclude, beyond reasonable doubt, that appellant accepted the responsibility to protect, shelter, feed and provide medical care to the three-year-old boy. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (discussing the applicable standard of review). Given that, we have no choice but to reverse the judgment of the trial court and render judgment acquitting appellant of that offense for which he was tried.

Brian Quinn
Chief Justice

Publish.

7