

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0760-24

### RAY LEE COCKRELL, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SIXTH COURT OF APPEALS
### BOWIE COUNTY

FINLEY, J., filed a dissenting opinion in which NEWELL and WALKER, JJ., joined.

## DISSENTING OPINION

As the State Prosecuting Attorney herself posits, the State's interpretation is a "novel extension" of the Injury to a Child statute. *See* State's Pet. for Discretionary Review at 2. I decline to endorse such an interpretation.

Our discussion of statutory duties in *Billingslea v. State*[1] and its progeny resolves this case. I would interpret "legal or statutory duty to act" in Section 22.04(b)(1) as a duty that is specific to the victim, rather than a duty to the general public. Because the Court does not, I respectfully dissent.

## I.  Analysis

### a. The evolution of Texas's injury to a child by omission statute.

To understand the proper scope of Section 22.04, it is appropriate to return to the statute's inception. As first enacted, Section 22.04 provided:

> A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence engages in conduct that causes serious bodily injury, serious physical or mental deficiency or impairment, or deformity to a child who is 14 years of age or younger.

TEX. PENAL CODE § 22.04 (West 1974).

In *Ronk v. State*, this Court confronted a "fundamentally defective indictment" that alleged injury to a child by omission under Section 22.04. 544 S.W.2d 123, 124 (Tex. Crim. App. 1976). The State alleged that the Ronkses "caused serious bodily injury" to a child less than fifteen years old, when they "failed and refused to secure proper medical treatment for the [complainant] after the [complainant] received burns to his body which required medical treatment." *Id.* We first turned to Section 22.04 and then looked at Section 6.01

---

[1] 780 S.W.2d 271 (Tex. Crim. App. 1989).

of the Penal Code, the "General Principles of Criminal Responsibility." *Id.* Section 6.01(c) provided, "A person who omits to perform an act does not commit an offense unless a statute provides that the omission is an offense or otherwise provides that he has a duty to perform the act." *Id.* (quoting TEX. PENAL CODE § 6.01(c) (West 1974)). We reasoned that an offense involving the failure to provide medical care for a child requires, as an essential element of the offense, that the defendant to have a duty to provide the care. *Id.* at 125. Under then-Section 12.04 of the Family Code, only the child's parents had that duty. *Id.* Because the indictments failed to allege a relationship between the Ronkses and the complainant that statutorily imposed a duty upon them to secure medical treatment for the complainant, the indictments did not allege an offense. *Id.* The indictments could not support the Ronkses' convictions, so we reversed and ordered the prosecutions to be dismissed. *Id.*

In 1977, the Legislature amended Section 22.04. *See* Acts 1977, 65th Leg., p. 2067, ch. 819, § 1, eff. Aug. 29, 1977. The statute now read:

> (a) A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, **by act or omission**, engages in conduct that causes to a child who is 14 years of age or younger:
>
> **(1) serious bodily injury;**
>
> **(2) serious physical or mental deficiency or impairment; or**

**(3) disfigurement or deformity.**

TEX. PENAL CODE § 22.04 (West 1977) (amendments emphasized). The act or omission amendment expanded the offense's scope and provided that injury to a child could be committed by *either* an act or an omission.

Two years later, the Legislature amended the statute again. *See* Acts 1979, 66th Leg., p. 365, ch. 162, § 1, eff. Aug. 27, 1979. The Legislature was concerned that "[i]n many child abuse cases where a parent beats a child, the offense does not qualify as serious bodily injury." House Comm. on Crim. Jur., *Bill Analysis*, S.B. 394, 66th Leg., R.S. (1979). To "protect children from abuse by their parents or other individuals," *id.*, the Legislature amended Section 22.04 to criminalize acts or omissions that cause "bodily injury," *see* TEX. PENAL CODE § 22.04 (West 1979). The statute now read:

> (a) A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, engages in conduct that causes to a child who is 14 years of age or younger:
>
> > (1) serious bodily injury;
> >
> > (2) serious physical or mental deficiency or impairment;
> >
> > (3) disfigurement or deformity**; or**
> >
> > **(4) bodily injury.**

*Id.* (amendments emphasized).

In 1981, the Legislature once more amended the statute and made two changes. The first change modified the offense levels for certain mental states (*e.g.*, intentional or knowing injury to a child was increased from a felony in the second degree to a felony in the first degree). *See* Acts 1981, 67th Leg., p. 472, ch. 202, § 4, eff. Sept. 1, 1981. The second change, however, was substantive: the Legislature added a new class of protected individuals. *See* Acts 1981, 67th Leg., p. 2397, ch. 604, § 1, eff. Sept. 1, 1981. Recognizing that "elderly people often cannot defend themselves against attack," and that "[t]he criminal justice system should be able to discourage [crimes against elderly persons] by imposing a heavier punishment for [them]," the Legislature decided that persons sixty-five years of age or older "deserve[d] the same protection" as children. House Comm. on Crim. Jur., *Bill Analysis*, H.B. 1459, 67th Leg., R.S. (1981). Consequently, Section 22.04 now read:

> (a) A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, engages in conduct that causes to a child who is 14 years of age or younger **or to an individual who is 65 years of age or older**:
>
> > (1) serious bodily injury;
> >
> > (2) serious physical or mental deficiency or impairment;
> >
> > (3) disfigurement or deformity; or
> >
> > (4) bodily injury.

TEX. PENAL CODE § 22.04 (West 1981) (amendments emphasized).

This leads us to this Court's opinion in *Billingslea*, which exposed a flaw in the 1981 version of Section 22.04. There, the appellant was convicted of injury to his ninety-four-year-old mother. *Billingslea*, 780 S.W.2d at 271–72. The appellant and his family lived with his mother in her home. *Id.* at 272. Adult Protective Services was called to perform a wellness check on his mother and found her "lying in bed, moaning and asking for help." *Id.* A part of her heel, hip, and back were eaten away by bedsores. *Id.* A medical examination at a hospital revealed that she was severely cachetic,[2] was suffering from near total disorientation, and had second degree burns and blisters "on her inner thighs, caused by lying in pools of her own urine." *Id.* at 272–73. "Maggots were festering in her open bedsores." *Id.* at 273. She later died. *Id.*

While alleging horrific conduct, the indictment in *Billingslea*, as in *Ronk*, was fundamentally defective because it did not allege a complete offense. *Id.* at 275–76. This Court recognized that there was no statutory duty of care for an adult child to their elderly parent. *Id.* at 276. To reach this conclusion, we made several observations. Regarding the aforementioned Section 6.01(c) of the Penal Code, for an omission to be penalized, "(1) a statute must provide that an omission is an offense, or (2) a statute otherwise prescribes a duty to

---

[2] "Clinically, cachexia manifests with excessive weight loss in the setting of ongoing disease, usually with disproportionate muscle wasting." John E Morley et al., *Cachexia: Pathophysiology and Clinical Relevance*, 83 AM. J. CLIN. NUTR. 735 (2006).

act, and a subsequent failure to act pursuant to that duty is an offense." *Id.* at 274. Even though Section 6.01(c) is stated disjunctively, we observed that "only the second clause is substantive." *Id.* "Logic dictates that in order for there to be an omission, there must be a corresponding duty to act." *Id.* The practice commentary and our prior case law confirmed that a statutory duty must exist between the defendant and the complainant to criminalize the omission. *See id.* at 274–75; *see also id.* at 274 ("[A] niece's failure to feed her invalid aunt, who starves to death as a result, is not guilty of criminal homicide because the niece has no statutory duty of support." (quoting the Practice Commentary to Section 6.01(c)); *Smith v. State*, 603 S.W.2d 846, 847 (Tex. Crim. App. [Panel Op.] 1980) (concluding that the allegation "by then and there denying the said [complainant] of food and nourishment and adequate medical attention" alleged omissions and that the "omissions" portion of the indictment was defective because it failed to allege a statutory duty to act under the Family Code); *Lang v. State*, 586 S.W.2d 532, 533–34 (Tex. Crim. App. [Panel Op.] 1979) (holding that an indictment was fundamentally defective for failing to state that the victim was a child 14 years of age or younger because the duty under Section 4.02 of the Family Code was limited to children 14 years old or younger). Because the appellant lacked a statutory duty of care for his elderly

mother, he lacked a legal duty to act, which rendered the indictment fundamentally defective. *Billingslea*, 780 S.W.2d at 276.

The statutory defect illuminated in *Billingslea* was short-lived due to the Legislature's 1989 amendments to Section 22.04. While the amended statute did not apply in *Billingslea* (the appellant's offense was committed in 1984), the Legislature amended Section 22.04 to cover factual scenarios like the one presented in *Billingslea. See* Acts 1989, 71st Leg., ch. 357, § 1, eff. Sept. 1, 1989. Section 22.04 now read:

> (a) A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or **intentionally, knowingly, or recklessly by** omission, engages in conduct that causes to a child, **elderly individual, or invalid individual**:
>
> > (1) serious bodily injury;
> >
> > (2) serious physical or mental deficiency or impairment;
> >
> > (3) disfigurement or deformity; or
> >
> > (4) bodily injury.
>
> **(b) An omission that causes a condition described by Subsections (a)(1) through (a)(4) of this section is conduct constituting an offense under this section if:**
>
> > **(1) the actor has a legal or statutory duty to act; or**
> >
> > **(2) the actor has assumed care, custody, or control of a child, elderly individual, or invalid individual.**

**\* \* \***

> **(d) The actor has assumed care, custody, or control if he has by act, words, or course of conduct acted so as to cause a reasonable person to conclude that he has accepted responsibility for protection, food, shelter, and medical care for a child, elderly individual, or invalid individual.**

TEX. PENAL CODE § 22.04 (West 1989) (amendments emphasized).[3] As we said in *Billingslea*, "the amendments to § 22.04 clearly suggest that the Legislature perceived the paradoxical futility of applying the former law: there could never be a failure to perform that which no one had a statutory duty to perform in the first place." 780 S.W.2d at 276–77. For the appellant in *Billingslea*, had his conduct occurred *after* the 1989 amendments, his conduct would have been prosecutable under Section 22.04(b)(2) because he had "care, custody, and control" over his elderly mother.[4]

---

[3] These amendments also added Section 22.04(c), which defines the terms "child," "elderly individual," and "invalid individual." *See* Tex. Penal Code § 22.04(c) (West 1989).

[4] The Bill Analysis to the 1989 amendments confirms as much:

> In Texas, criminal liability cannot be imposed if no statutory duty to act exists. An example is the case in 1987 of an 87-year-old Houston woman who was found malnourished, lying in excrement and covered with bedsores in a home she shared with her 55-year-old daughter and grandson in his 30s. The woman died approximately three weeks later. Her relatives could not be prosecuted because, according to Texas statutes, no law had been broken. SB 1154 would ensure that it was no longer be legal [sic] to allow someone to die of neglect. Invalids are just as defenseless, in most cases, as children and the elderly. This bill would give them equal protection from intentional injury, as well as from injury caused by neglect on the part of someone who had recognizably assumed care, custody and control for their well-being.

But the 1989 amendments were not the last legislative amendments to Section 22.04. In 1991, the Legislature deleted the phrase "engages in conduct that" in subsection (a). *See* Acts 1991, 72nd Leg., ch. 497, § 1, eff. Sept. 1, 1991; Tex. Penal Code § 22.04(a) (West 1991). And in 1993, the Legislature established a new felony category, the state-jail felony, and reclassified Section 22.04 offenses accordingly. *See* Acts 1993, 73rd Leg., ch. 900, § 1.01, eff. Sept. 1, 1994 (*e.g.*, reclassifying recklessly causing bodily injury to a child to a state-jail felony offense level).

Then in 2005, the Legislature made its first substantive change to Section 22.04 since the 1989 amendments. *See* Acts 2005, 79th Leg., ch. 268, § 1.125(a), eff. Sept. 1, 2005. The amendment added criminal liability for owners, operators, or employees of care facilities who, by omission, caused injury to protected individuals:

> (a-1) A person commits an offense if the person is an owner, operator, or employee of a group home, nursing facility, assisted living facility, intermediate care facility for persons with mental retardation, or other institutional care facility and the person intentionally, knowingly, recklessly, or with criminal negligence by omission causes to a child, elderly individual, or disabled individual who is a resident of that group home or facility:

---

The Family Code gives parents the duty to provide care, protection and medical support to their children. Elderly parents should receive the same protections.

House Comm. on Crim. Jur., *Bill Analysis*, S.B. 1154, 71st Leg., R.S. (1989).

      (1) serious bodily injury;

      (2) serious mental deficiency, impairment, or injury;

      (3) bodily injury; or

      (4) exploitation.

TEX. PENAL CODE § 22.04(a-1) (West 2005). Subsection (b), which defines when an omission is "conduct constituting an offense" under Section 22.04, was also amended to include the new (a-1) language. *See id.* § 22.04(b) (West 2005). "Exploitation" was removed from subsection (a-1) six years later in 2011. *See* Acts 2011, 82nd Leg., ch. 620 (S.B. 688), §§ 5, 11, eff. Sept. 1, 2011.

    In 2015, the Legislature amended Section 22.04 to redefine "disabled individual" to include intellectual and development disabilities (and other disabilities), as well as amending the statute to create an affirmative defense if the actor did not know or could not have reasonably known the complainant was a disabled individual. *See* Acts 2015, 84th Leg., ch. 719 (H.B. 1286), §§ 1, 2, eff. Sept. 1, 2015. In 2017, the Legislature amended subsection (a-1) to include "boarding home" facilities and added a new definition to "disabled individual" under subsection (c)(3). *See* Acts 2017, 85th Leg., ch. 361 (H.B. 3019), §§ 1, 2, eff. Sept. 1, 2017. And in 2021, the Legislature amended subsection (d), which describes how an actor assumes care, custody, or control

over a child, elderly individual, or disabled individual. *See* Acts 2021, 87th Leg., ch. 187 (S.B. 1354), § 1, eff. Sept. 1, 2021.

The preceding foray into the almost-fifty-year-long legislative history of Section 22.04 serves an important purpose: Absent from this historical review is any mention of duties that are not familial- or care-oriented. The duties which Section 22.04 imports are restricted to those between an actor (the defendant) and an identifiable, specific individual or class of individuals. All of the legislative amendments to Section 22.04 since its codification in 1974 have all criminalized offenses committed by family members or persons having care over others. The Legislature spelled out the purpose behind the 1989 amendments: "Non-parental situations in which a person's negligent care led to the harm of another are not circumscribed by law and do not come within the purview of Section 22.04." *See* S. Comm. on Crim. Just., *Bill Analysis*, Tex. S.B. 1154, 71st Leg., R.S. (1989). The Legislature solved that issue by adding the "care, custody, and control" language. Section 22.04's injury by omission covers the factual scenarios such as when the parent causes injury to the child, or the child to the elderly parent, or the nurse to the patient, or the caregiver to the caretaker.

Our post-1989 case law confirms this interpretation of Section 22.04. In *Hawkins v. State*, we granted discretionary review to determine whether the

"appellant had no legal duty to remove the infant victim from the abusive parent where appellant had no 'familial relationship' with the infant, but had exercised care, custody and control over the infant." 891 S.W.2d 257, 258 (Tex. Crim. App. 1994). The appellant was the live-in boyfriend of the infant victim's biological mother, and on several occasions, the child's mother beat the infant in the presence of the appellant. *Id.* The appellant stood by and did nothing to stop the abuse. *See id.* Eventually, the mother "swung her infant by its feet and struck its head against the arm of a couch causing permanent brain damage." *Id.* The State alleged that the appellant caused injury to the child complainant "by failing to remove the child from the abusive mother and that he had a duty to remove the child because he had assumed care, custody, and control of the child under Section 22.04(b)(2)." *Id.* We clarified the difference between Section 22.04(b)(1) and Section 22.04(b)(2). *Id.* at 258–59. "Section 22.04(b)(1) imposes a duty to act if the actor has a legal or statutory duty to prevent the injury to the child." *Id.* at 258. That is, the duty extends to the specific child who is injured. *See id.* An example of this type of duty "is the case where the actor has a 'familial relationship' with the child." *Id.* Based on this, we held that subsection (b)(2) did not require a "familial relationship" to show a legal duty to act. *Id.* at 259 ("We hold the plain meaning of Section 22.04(b)(2) does not require that the actor possess a duty under the Texas Family Code to

protect the child victim." (citing *Boykin v. State*, 818 S.W.2d 782 (Tex. Crim. App. 1991))).

As shown above, our long-standing interpretation of Section 22.04's omission based criminal liability has required some type of duty directly owed by the actor to the complainant. *Billingslea*, 780 S.W.2d at 276 ("[T]he indictment could not have alleged a statutory duty for the appellant to act on behalf of his ailing parent because no such duty existed."); *cf. State v. Guevara*, 137 S.W.3d 55, 57 (Tex. Crim. App. 2004) (noting that the pre-1989 version of Section 22.04 "did not itself assign a duty of care to any particular person").

**b. What it means.**

The flaw in the Court's logic is that it overlooks the interplay between subsection (b)(1) and subsection (b)(2). The legal or statutory duty to act covered by Section 22.04(b)(1) is not limitless. It does not cover an unidentifiable, unknown individual. Rather, it is limited to those whom the actor owes a direct, specific legal or statutory duty. Subsection (b)(2) provides a safety net for situations in which the actor did not owe a duty to the individual but nevertheless "assumed care, custody, or control of a child, elderly individual, or disable individual." TEX. PENAL CODE § 22.04(b)(2). Section 22.04(b)(1) does not cover the factual scenario in this case where Appellant's conduct, although morally reprehensible, unforeseeably causes

injury to a victim to whom he lacked a duty to act, whether familial- or care-oriented.

When writing "legal or statutory duty to act" into Section 22.04(b)(1), the Legislature did not expand Section 22.04 to include *every statutory duty* codified in law or regulation. If that were the case, then any statute that uses the magical word "shall" could theoretically be imported into Section 22.04 for purposes of an injury to a child prosecution. Maj. Op. at 13–14. The majority's interpretation of Section 22.04 may invite prosecutors to throw spaghetti at the wall and see what sticks.

The Court may respond by saying my concerns should properly be aimed at our legislators and not the Court's opinion. Yet there is little reason to place the Legislature in a reactionary position to the Court's "novel extension" of Section 22.04. *See* State's Pet. for Discretionary Review at 2. Instead, we should simply interpret the statute in accord with its inherent limitations. Perhaps the Court's opinion today will spark the Legislature to correct us[5] and, in my estimation, limit the reach of Section 22.04 to what the Legislature intended: The statutory duties contemplated by subsection (b)(1) are those that

---

[5] This would not be the first time. *See, e.g.*, Sen. Rsch. Center., *Bill Analysis*, S.B. 1220, 89th Leg., R.S. (2025) ("The purpose of this bill is to overturn *Ex Parte Charette*, 2024 WL 4260409 (Tex. Crim. App. Sept. 18, 2024).").

extend to a specific class of individuals and cannot be general duties to the public.

## II.     Conclusion

I would interpret "legal or statutory duty to act" in Section 22.04(b)(1) as a duty that is specific to the victim, rather than a duty to the general public. Consequently, the court of appeals was correct to say that the duties in the dangerous dog statute could not be imported to felony injury to a child by omission. I would affirm the judgment of the court of appeals. Because the Court does not, I respectfully dissent.


**Filed: August 20, 2025**
**Publish**